**In re Robert ARKELL, Debtor.**

**Bankruptcy No. 91–09407–KL3–13.**

United States Bankruptcy Court, M.D. Tennessee.

April 5, 1994.

terest in casualty insurance proceeds is limited by the confirmed Chapter 13 plan to the balance of its allowed secured claim. *Tucker* appropriately limits the lender to recovery of its allowed secured claim. The following are findings of fact and conclusions of law. Fed. R.Bankr.P. 7052.

I

The debtor bought a Nissan Sentra in March of 1990. Nissan Motor Acceptance Corporation financed the purchase. The debtor filed this Chapter 13 case on October 1, 1991. The plan, confirmed on November 5, 1991, recited that NMAC would retain its lien on the Sentra to the extent of the value of its collateral. The Sentra was valued at $4,500 payable with 10% interest and a monthly payment of $150. The plan also provided a 20% dividend to unsecured claim holders. NMAC did not object to confirmation and did not contest the value of its collateral. NMAC filed a proof of claim for $8,565.57 on February 26, 1992.[2]

After confirmation, the Sentra was totalled in an accident. By agreed order entered June 30, 1992, the debtor used collision insurance proceeds of $8,015.05 to buy "substitute collateral," a Geo Prism. This agreed order required the debtor to "maintain physical damage insurance on the substitute vehicle" and stated "NMAC shall be paid in accordance with the terms and conditions of the debtor's confirmed Chapter 13 plan."

A second accident claimed the Prism. State Farm Insurance Company tendered $8,225.50 jointly payable to the debtor and NMAC for loss of the Prism. NMAC moved

C. Daniel Brollier, Clarksville, TN, for debtor.

James Davidson Lane, II, Jennings, Lane & Ramer, P.C., Nashville, TN, for Nissan Motor Acceptance Corp.

### *MEMORANDUM*

KEITH M. LUNDIN, Bankruptcy Judge.

This motion for relief from the stay invites reconsideration of the question decided 11 years ago by Chief Judge Paine in *In re Tucker*, 35 B.R. 35 (Bankr.M.D.Tenn.1983) [1]; whether an undersecured car financier's in-

---

**1.** *Accord In re McDade*, 148 B.R. 42, 44 (Bankr. S.D.Ill.1992) (after confirmation of a Chapter 13 plan, partially secured claim holder is only entitled to the allowed amount of its secured claim upon destruction of its collateral and payment of insurance proceeds. *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) does not change this result.); *In re Pourtless*, 93 B.R. 23, 26 (Bankr.W.D.N.Y.1988) (11 U.S.C. § 1327 fixed secured claim holder's rights at confirmation. Upon post-confirmation destruction of collateral, claim holder is only entitled to that portion of insurance proceeds which pays the secured claim in full.). *See Bradt v. Woodlawn Auto Workers*, 757 F.2d 512, 515 (2d Cir.1985) (insurance check for car repairs is property of

Chapter 13 estate that must be turned over by secured claim holder); *Woods v. John Fox Oldsmobile, Inc. (In re Woods)*, 97 B.R. 850, 851–52 (Bankr.W.D.Va.1989) (insurance proceeds from destruction of debtor's car are property of the Chapter 13 estate. Debtor can use insurance proceeds to purchase a substitute car. Secured claim holder is only entitled to adequate protection in the form of a lien on the substitute car.).

**2.** The timeliness of this proof of claim has not been challenged. *See In re Sullins*, 161 B.R. 957 (Bankr.M.D.Tenn.1993) and *In re Gullatt*, 164 B.R. 279 (Bankr.M.D.Tenn.1994).

for relief from the stay asserting a security interest in all of the insurance proceeds. The debtor responded that NMAC's interest in the insurance proceeds was limited by the confirmed plan to the balance of its allowed secured claim. Because of monthly payments since confirmation, the balance of NMAC's allowed secured claim is $1,588.48. The debtor proposed to pay NMAC $1,588.48 and to use the remainder of the insurance proceeds to buy another car.[3]

## II

11 U.S.C. § 1327(a) states plainly that "the provisions of a confirmed plan bind . . . each creditor, . . . whether or not such creditor has objected to, has accepted, or has rejected the plan." NMAC admits that it had notice of confirmation and of its opportunity to object. It did not attend the meeting of creditors or object to confirmation or contest valuation of its collateral.

NMAC is bound by confirmation of this plan. The confirmed plan fixed NMAC's interest in property of the estate at $4,500. Confirmation bound NMAC to accept $4,500 (with interest) in full satisfaction of its lien rights.

■ Relief from the stay is precluded by confirmation of a plan and by § 1327(a) where the ground for relief is an objection to confirmation that could be asserted before confirmation. *Lomas Mortgage USA v. Wiese (In re Wiese)*, 980 F.2d 1279, 1284 (9th Cir.1992) (relief from the stay after confirmation is inappropriate where all of the creditor's arguments for relief from the stay were properly rejected at confirmation), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993). *Accord Lester Mobile Home Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204 (W.D.Va.1990) (§ 1327(a) and principles of *res judicata* preclude use of motion for relief from the stay to attack valuation of collateral); *Lawson v. Lackey (In re Lackey)*, 148 B.R. 626 (Bankr.

N.D.Ala.1992) (confirmation precludes relief from the stay where grounds for stay relief were asserted and rejected as objections to confirmation); *In re Walker*, 128 B.R. 465 (Bankr.D.Idaho 1991) (§ 1327(a) precludes use of post-confirmation motion for relief from the stay to collaterally attack confirmation even where grounds for stay relief would have defeated confirmation); *Anaheim Sav. and Loan Ass'n v. Evans*, 30 B.R. 530 (9th Cir. BAP1983) (confirmation order is *res judicata* "as to all justiciable issues which were or could have been decided at the confirmation hearing").

■ The predicate for NMAC's motion for relief from the stay is the assertion that its security interest in casualty insurance proceeds exceeds the balance of its secured claim—in other words, that the extent of its secured claim was miscalculated at confirmation. NMAC's belief that the extent of its security interest was improperly limited by the confirmation order had to be litigated before confirmation. *See In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990) (secured claim holder is bound to accept surrender of property in full satisfaction of its claim notwithstanding mistaken valuation of property at confirmation. Creditor's failure to attack valuation at the confirmation hearing precludes post-confirmation litigation of its entitlement as a secured claim holder.); *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989) (secured claim holder's failure to object to confirmation leaves the creditor bound by the provisions of the confirmed plan with respect to its rights as a secured claim holder under § 1325(a)(5).); *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993) (mortgage holder's failure to object to confirmation precludes post-confirmation assertion of greater entitlement than that provided by the plan).

That casualty insurance companies have been willing to pay more than the value of the car fixed by the confirmation order does

---

**3.** The debtor's response to NMAC's motion for relief from the stay is in essence a request to modify the confirmed plan under 11 U.S.C. § 1329. No procedural objection to this response has been raised by NMAC. 11 U.S.C. §§ 1329(a)(2) and (a)(3) contemplate that a Chapter 13 debtor can change the timing of payments to a secured claim holder provided for by the plan, or can make a lump sum payment to a creditor from a source other than the debtor's regular income. *See also* 11 U.S.C. § 1322(b)(8), applicable at modification after confirmation under 11 U.S.C. § 1329(b)(1).

not entitle NMAC to relief from the stay. The difference between the insurance proceeds and the value determined at confirmation may be due to differences in methodology for determining value or even to value added by the debtor after confirmation. The source of this difference is irrelevant to this motion for relief from the stay. If NMAC's collateral was worth more than $4,500 at confirmation, then NMAC's failure to participate in the confirmation process forfeited that increment of value. If value was added to the car by the debtor after confirmation, then that increment of value belongs to the Chapter 13 estate. NMAC cannot use a post-confirmation motion for relief from the stay to collaterally attack the confirmation order.

■ Post-confirmation substitution of the Prism for the Sentra did not increase NMAC's entitlement under the confirmed plan. The agreed order permitting substitution of collateral plainly recites that NMAC "shall be paid in accordance with the terms and conditions of the debtor's confirmed Chapter 13 plan." At confirmation of the original plan, NMAC had no interest in casualty insurance in excess of the present value of its security interest in the car. At destruction of the Sentra, NMAC had no expectation of an interest in the Prism in excess of its interest in the Sentra.[4] As explained by Judge Paine in *Tucker,* "the status and method for payment of [the bank's] claim was established at the debtor's confirmation hearings and, so long as these plans continue to be in effect, [the bank] is bound by their provisions pursuant to § 1327(a)." *Tucker,* 35 B.R. at 36.

The Third Circuit's recent opinion in *First Fidelity Bank v. McAteer,* 985 F.2d 114 (3d Cir.1993) does not suggest departure from *Tucker.* In *McAteer,* a bank had a security interest in the debtor's truck and in a credit life insurance policy. By contract, the insurance company was required to pay the bank in full at the debtor's death. The debtor died after confirmation of a Chapter 13 plan that "crammed down" the value of the truck. The Third Circuit held that the bank's interest in the proceeds of the life insurance policy was "not the property of the debtor's estate" and thus the bank was entitled to recover all of its debt directly from the insurance company. *Id.* at 118–19.

■ In contrast, casualty insurance proceeds from the destruction of property of a Chapter 13 estate are property of the Chapter 13 estate. *Bradt v. Woodlawn Auto Workers,* 757 F.2d 512, 515 (2d Cir.1985) (insurance proceeds for repairs to a car are "unquestionably" property of the Chapter 13 estate because conversion in form of property does not change its character as property of the estate). *Accord Woods v. John Fox Oldsmobile, Inc. (In re Woods),* 97 B.R. 850, 851–52 (Bankr.W.D.Va.1989).

This debtor's insurance contract permitted State Farm to pay a collision loss to NMAC "as its interest may appear." NMAC's interest in the Prism was defined by the confirmation order. After confirmation, this debtor had no obligation to insure NMAC with respect to its *unsecured* claim. In *McAteer,* the bank's contract right against the life insurance company was not limited by the value of its security interest in the truck. Here, after confirmation, NMAC's only right to payment with respect to the car was the present value of $4,500. If NMAC believed it had an interest in casualty insurance proceeds in excess of $4,500, it had to assert that right before confirmation.

---

4. NMAC's argument for relief from the stay might be interpreted as an argument that the debtor (mistakenly) contracted with State Farm to insure NMAC with respect to loss of the Prism in excess of NMAC's entitlement under the confirmation order. Put another way, NMAC may be arguing that the debtor mistakenly extended NMAC's security interest in the Prism, to include "value" which it did not have in the Sentra. In the alternative, NMAC may be arguing that State Farm has (mistakenly) determined that NMAC's interest in the insurance proceeds is greater than the interest defined by the confirmation order. Under either construction, it would be inappropriate to grant NMAC relief from the stay.

If the debtor mistakenly overinsured NMAC at substitution of the Prism for the Sentra, then the debtor, the trustee, or the holder of an allowed unsecured claim has standing to modify this plan to correct that error. 11 U.S.C. § 1329(a). If State Farm has mistakenly issued a check to NMAC in an amount that exceeds NMAC's interest in property of the estate, then State Farm is appropriately instructed to reissue its check.

### III

Payments through this Chapter 13 plan have reduced NMAC's allowed secured claim to $1,588.48. NMAC has a security interest in the insurance proceeds to that extent. The debtor's proposal to pay NMAC the balance of its allowed secured claim is not a ground for relief from the stay. *Tucker,* 35 B.R. at 37. Use of the balance of the insurance proceeds to buy a replacement car is consistent with the requirement in the confirmation order that the debtor preserve and protect property of the estate. *See Woods,* 97 B.R. at 852.

An appropriate order will be entered.

### *ORDER*

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that Nissan Motor Acceptance Corporation's motion for relief from the stay is denied.

IT IS SO ORDERED.