**In re Ralph SUTER, Debtor.**

**Bankruptcy No. 91–80088–EDB–13.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

Sept. 30, 1994.

---

James M. Gaines, Huntsville, AL, for debtor.

Melissa Wimberly Larsen, Huntsville, AL, for movant.

## MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTION TO SUBSTITUTE COLLATERAL

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court for a hearing on the *Motion to Substitute Collateral* filed by the Debtor, Mr. Ralph Suter. Appearing were Mr. James M. Gaines, the attorney for the Debtor, and Ms. Melissa Wimberly Larsen, the attorney for AmSouth Bank of North Alabama. The matter was submitted upon the record in the case and the arguments of counsel, who advised the Court that no testimony would be offered.[1]

## I. FINDINGS OF FACT AND CONTENTIONS

The Debtor filed his Chapter 13 petition on January 11, 1991. AmSouth holds a security interest in the Debtor's 1989 Ford Ranger Pick Up Truck. The debt secured by the lien on the Debtor's truck was $7,746.00 as of the date the bankruptcy petition was filed. Based upon that debt, AmSouth was allowed a secured claim in the amount of $6,425.00 and an unsecured claim in the amount of $1,321.00. The Debtor's plan was confirmed on July 9, 1991. Payments made by the Debtor have reduced AmSouth's secured claim to $2,395.71.

The Debtor's truck was damaged beyond repair in an accident in 1994. State Farm Insurance Company is the insurer of the truck. The loss payee on the insurance policy is AmSouth. State Farm paid AmSouth the sum of $3,245.95 in total settlement of the claim for damage to the truck.

The Debtor needs another automobile and has asked this Court to order AmSouth to turn over the funds paid by State Farm so that he can use those funds to purchase another automobile. In return, the Debtor has offered to give a lien to AmSouth on the "replacement vehicle" that will secure payment of the remaining portion of AmSouth's secured claim. AmSouth contends that since the insurance proceeds were payable to AmSouth, the proceeds belong to AmSouth and are not property of the bankruptcy estate, and, therefore, no basis exists under the Bankruptcy Code for allowing the Debtor to use the proceeds.

## II. CONCLUSIONS OF LAW

### A. Insurance Proceeds as Cash Collateral and Property of the Estate

■ The Debtor's theory is based upon the proposition that the insurance proceeds

---

**1.** This matter was assigned to this judge because of a conflict of the presiding judge of this division.

are cash collateral and that AmSouth merely has a lien on the proceeds. If the insurance proceeds are cash collateral, the Debtor may use the proceeds if he provides adequate protection of AmSouth's interest in the proceeds, 11 U.S.C. § 363(e), such as providing AmSouth a security interest in substitute collateral.

■ Cash collateral is defined in 11 U.S.C. § 363(a) as cash "in which the estate and an entity other than the estate have an interest." Unless the estate has an interest is the insurance proceeds, that is, unless the proceeds can be considered property of the bankruptcy estate under 11 U.S.C. § 541, then the proceeds cannot be cash collateral.

■ Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The Debtor does not argue if he were not a debtor in a bankruptcy case, that he would be entitled to the proceeds of the insurance policy. Bankruptcy does not create interests in property that did not exist otherwise. *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1399 (5th Cir.1987). And this Court agrees with others who have refused to "elevate the rights of the ... debtor to create an interest in an insurance policy that would not exist but for the bankruptcy filing." *In re Johnson,* 162 B.R. 464, 466 (Bankr.M.D.N.C.1993).

■ Ownership of an insurance policy does not necessarily entail ownership of the proceeds of the policy. Parties may contract that someone other than the policy owner will receive the proceeds of the policy.[2] The named beneficiary of an insurance policy is the owner of the policy proceeds. The Supreme Court of Alabama has stated, "A loss payable clause in an insurance policy gives the party named as the one to whom payment is to be made the superior right to recover to the extent of his or her interest, and the assured can only recover any balance

in excess." *Home Ins. Co. of New York v. Tumlin,* 241 Ala. 356, 2 So.2d 435 (1941). Because AmSouth was the loss payee of the insurance policy, the proceeds of the policy are not property of the bankruptcy estate and are payable to AmSouth, at least to the extent of AmSouth's interest in the property insured.[3] *Accord, First Fidelity Bank v. McAteer,* 985 F.2d 114 (3rd Cir.1993); *In re Anchorage Nautical Tours, Inc.,* 102 B.R. 741 (9th Cir. BAP 1989); *In re Johnson,* 162 B.R. 464 (Bankr.M.D.N.C.1993); *In re Goodenow,* 157 B.R. 724 (Bankr.D.Me.1993); *In re McLean Industries, Inc.,* 132 B.R. 271 (Bankr.S.D.N.Y.1991); *In re Offshore Carrier and Liner Service, Inc.,* 82 B.R. 504 (Bankr.E.D.Mo.1988).

■ Since the Debtor is the owner of the insurance policy, however, he is entitled to recover the proceeds of the policy which exceed AmSouth's interest in the property insured. Section 506(a) of the Bankruptcy Code provides that a creditor only has a secured claim to the extent of the value of the creditor's interest in the property subject to the creditor's security. Section 506(d) provides that the creditor's lien is void to the extent that it purports to secure a claim which is not an allowed secured claim. Consequently, a creditor's lien is void to the extent it purports to secure an amount which exceeds the value of the property subject to the creditor's security.

■ The provisions of a confirmed Chapter 13 plan bind all creditors. 11 U.S.C. § 1327. Under the provisions of the plan confirmed in this case, AmSouth was allowed a secured claim in the amount of $6,425.00 payable in monthly installments with interest at the rate of 11.95% per annum. AmSouth's lien on the insured vehicle was, at that point, nullified, by operation of Section 506(d), to the extent that it might have otherwise secured an amount which exceeded $6,425.00. AmSouth's secured claim has subsequently been reduced to the amount of $2,395.71 by

---

2. The person or entity receiving the proceeds of course must have an insurable interest. This point is discussed in paragraph II.B. below.

3. The present case may be distinguishable from cases in which the secured creditor only has a

security interest in the insurance proceeds and is not a loss payee on the policy, as well as cases in which the insurance proceeds are payable jointly to the debtor and the secured creditor.

payments made by the Debtor pursuant to the plan.[4] Consequently, AmSouth's lien on the insured vehicle has been extinguished to the extent that it secures any amount that exceeds $2,395.71. *In re Pourtless*, 93 B.R. 23, 26 (Bankr.W.D.N.Y.1988).

### B. Insurable Interest

 From a secured creditor's perspective, property insurance is a substitute for the collateral insured. A contract for property insurance is unenforceable except for the benefit of persons who have an "insurable interest" in the property insured at the time of loss. Ala.Code 1975, § 27–14–4(a). An "insurable interest" is an "actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." Ala.Code 1975, § 27–14–4(b). "The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury or impairment thereof." Ala. Code 1975, § 27–14–4(c). Since AmSouth's lien presently secures the sum of $2,395.71, AmSouth's insurable interest in the Debtor's truck cannot exceed that amount. The amount paid to AmSouth by State Farm which exceeds $2,395.71, therefore, must be paid by AmSouth to the Debtor, as owner of the insurance policy. *See, e.g., In re Arkell*, 165 B.R. 432 (Bankr.M.D.Tenn.1994); *In re McDade*, 148 B.R. 42 (Bankr.S.D.Ill.1992); *In re Brumlow*, 96 B.R. 375 (Bankr.M.D.Fla. 1989); *In re Pourtless*, 93 B.R. 23, 26 (Bankr. W.D.N.Y.1988); *In re Tucker*, 35 B.R. 35 (Bankr.M.D.Tenn.1983); *In re Alexander*, 11 B.R. 313 (Bankr.S.D.Ohio 1981).

### ORDER

 Based on the record in this case and the arguments of counsel, the Court has determined that the Debtor's *Motion to Substitute Collateral* should be denied but that AmSouth may not retain the insurance proceeds made the basis of the Debtor's motion to the extent that the proceeds exceed Am-

South's secured claim. It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1. The *Motion to Substitute Collateral* filed by the Debtor is hereby denied.

2. AmSouth Bank of North Alabama is hereby directed to remit the sum of $850.24 to the Debtor.

Done and ordered.

### *ORDER ON MOTION TO RECONSIDER*

An order was entered in this case on September 30, 1994 in which the Court denied the Debtor's Motion to Substitute Collateral. The "collateral" to substitute was the proceeds of an insurance policy payable to AmSouth Bank of North Alabama. The Debtor asked to substitute the insurance proceeds for an automobile which was damaged during his current bankruptcy case. On October 5, 1994 the Debtor asked the Court to reconsider its September 30 Order. A hearing was held on November 16, 1994 at which the parties presented arguments in support of their positions. The Court has reconsidered its order and for the reasons explained below, finds that its September 30 Order should stand.

 The basis of the Debtor's request for reconsideration is that the insurance proceeds are property of the estate because they are proceeds of property of the estate under 11 U.S.C. § 541(a)(6). This Court held that under state law, because AmSouth Bank was the loss payee of the insurance policy, the insurance proceeds were not property of the estate. The Debtor argued that state law was not applicable and that the matter was answered by section 541(a)(6). The facts are not in dispute and neither side has asked the Court to reconsider that aspect of this case.

In support of his motion the Debtor asked the Court to consider two cases which the Debtor contends supports his motion for substitution. The Court had considered these cases prior to issuing its original order and after rereading them, this Court still dis-

---

4. The amount indicated was taken from a photocopy of an interim statement prepared by the Chapter 13 Trustee that was attached to the Debtor's brief. If the amount stated is incorrect, the parties should, for purposes of complying with the provisions of this order, substitute the correct amount and proceed accordingly.

agrees with the proposition that these cases support the Debtor's contention that the insurance proceeds are property of the estate. As noted by the Court, the facts of this case distinguish it from those where insurance proceeds are payable jointly to the debtor and a secured creditor or where the secured creditor has only a security interest in the insurance proceeds. In this case AmSouth Bank was the loss payee on the insurance policy and the insurance proceeds were payable only to the bank. Both cases cited by the Debtor involve proceeds payable jointly to the debtor and the secured creditor. In *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512 (2nd Cir.1985) the Court of Appeals for the Second Circuit, in holding that the insurance draft in that case was property of the estate and thus available for substitution, wrote:

> Appellant's final argument is that because there was a "loss payable" clause in the insurance policy, Bradt had no interest in the payment. We disagree. As the district court pointed out, the insurance draft was made payable to both Woodlawn and Bradt, making it evident that Bradt had some interest in it.

*Id.* at 516. In *In re Arkell*, 165 B.R. 432 (Bankr.M.D.Tenn.1994), the issue was "whether an undersecured car financier's interest in casualty proceeds is limited by the confirmed chapter 13 plan to the balance of its allowed secured claim." *Id.* at 433. The bankruptcy court wrote:

> Payments through this Chapter 13 plan have reduced NMAC's allowed secured claim to $1,588.48. *NMAC has a security interest in the insurance proceeds to that extent.* The debtor's proposal to pay NMAC the balance of its allowed secured claim is not a ground for relief from the stay. *Use of the balance of the insurance proceeds to buy a replacement car* is consistent with the requirement in the confirmation order that the debtor preserve and protect property of the estate.

*Id.* at 436 (citation omitted) (emphasis added). The Tennessee court's holding is consistent with that of this Court, and that is true even where the secured creditor in the Tennessee case was paid by the insurance company jointly with the debtor and where the Tennessee court found that "casualty" insurance proceeds are property of the estate.

On reconsideration of its September 30, 1994 Order denying the Debtor's Motion for Substitution of Collateral, this Court finds that the September 30, 1994 Order should stand.

It is therefore **ORDERED ADJUDGED AND DECREED,** that the Court's Order of September 30, 1994 denying the Debtor's Motion for Substitution of Collateral, remains in effect.