In re Berhe Hagos HABTEMICHAEL, Debtor.

Bankruptcy No. 92–41989.

United States Bankruptcy Court, W.D. Missouri.

Jan. 22, 1996.

Louis J. Wade, Kansas City, MO, for Toyota Motor Credit.

Steven L. Crouch, Kansas City, MO, for Debtor.

Richard V. Fink, Chapter 13 Trustee, Kansas City, MO.

## ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion filed by Toyota Motor Credit Corporation (Toyota) requesting that the Court reconsider its order entered on November 29, 1995, in which the Court directed that insurance proceeds on destroyed collateral be distributed to pay Toyota's secured claim in full, pay $400 to the Chapter 13 Trustee, and pay the remaining balance to the debtor. The Court grants Toyota's motion to reconsider and rules as follows.

## FACTS

On December 12, 1990, Berhe Hagos Habtemichael (debtor) purchased a used 1990 Chevrolet Geo Prizm from Van Toyota II for the purchase price of $8141.36. The debtor made a downpayment of $500 and financed the balance of the purchase price for a sixty month period at 18% interest for a total sale price of $12,904.40. Van Toyota II assigned

the contract to Toyota and Toyota is shown as the lienholder on the certificate of title. The terms of the sales contract required the debtor to purchase "physical damage insurance" on the Geo Prizm and to show the creditor as loss payee. The debtor purchased the required insurance from American Family Insurance Group (American Family).[1]

On June 15, 1992, the debtor filed for rehabilitation under Chapter 13 of the Bankruptcy Code. Toyota filed a proof of claim in the amount of $6645.32. The debtor's plan proposed to treat $5800 of Toyota's claim as secured with interest at 9% APR to be paid pro-rata from the monthly plan payment of $200 over the sixty month life of the plan. The balance of Toyota's claim, $845.32, would be treated as a general unsecured claim. The debtor proposed to pay 10% to the general unsecured creditors. Toyota did not object to this treatment under the plan. The debtor's plan was confirmed on August 5, 1992. Pursuant to 11 U.S.C. § 1327(b),[2] upon confirmation the property of the bankruptcy estate revested in the debtor.

Sometime prior to October 4, 1995, the exact date has not been provided to the Court, the Geo Prizm was totally destroyed in an accident. American Family submitted an insurance draft made jointly payable to the debtor and Toyota in the amount of $4283.50. The payments over the life of the plan have reduced the balance of Toyota's secured claim to $1143.81.[3]

On October 4, 1995, the debtor filed an application to distribute the insurance proceeds. The debtor requested that the Court order distribution of the insurance proceeds as follows: payment in full of the secured portion of Toyota's claim plus interest at 9% APR; payment of $400 to the Chapter 13 Trustee less the Trustee's allowable fees and costs, which would cover plan payments for two months; and payment to the debtor of the remaining balance, which the debtor would use to purchase another motor vehicle for transportation to and from work. The debtor also requested that the Court order Toyota to release the title of the Geo Prizm to American Family after it had been paid on the secured portion of its claim. The Court granted the debtor's motion for emergency hearing and shortened notice and scheduled the hearing for October 16, 1995, at 10:30 a.m. The hearing proceeded as scheduled. The debtor and counsel appeared, but neither Toyota nor counsel for Toyota appeared. The Court granted the debtor's application in an order filed on October 16, 1995, and an amended order filed on November 29, 1995, which clarified the previously filed order.

On December 11, 1995, Toyota filed the present motion for reconsideration of the Court's order of November 29, 1995. Toyota contends that it did not receive notice of the application or the emergency hearing for the reason that debtor's counsel sent same to Toyota's old address. A hearing on Toyota's motion to reconsider was held on January 8, 1996. In addition to claiming a violation of due process based on lack of notice, Toyota argues that as loss payee under the insurance policy Toyota is entitled to full payment of the outstanding balance of its claim, or, in the alternative, that the insurance proceeds remaining after satisfaction of Toyota's secured portion of its claim and the $400 payment to the Trustee must be distributed for the benefit of all the unsecured creditors, including Toyota, instead of being turned over to the debtor.

---

1. The insurance policy was not submitted to the Court.

2. 11 U.S.C. § 1327(b) states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Neither the plan nor order of confirmation provided otherwise in this case.

3. In pleadings before the Court the debtor contends that the balance remaining due on Toyota's secured portion of its claim is $1143.81 plus interest at 9% APR and that $84.53 (10% of $845.32) is due Toyota for the unsecured portion of its claim. In its pleadings, Toyota does not dispute that it is owed $1143.81 on the secured portion of its claim, but does contend that the payoff amount of the debt is $3066.42. In this order, the Court will use the figure of $1143.81 as the remaining amount due on the secured portion of the claim and if this figure is incorrect the Chapter 13 Trustee, debtor and Toyota may calculate the correct figure to be used to distribute the insurance proceeds in accordance with this order.

Because there is a question as to whether Toyota received notice of the application and the emergency hearing, the Court grants the motion to reconsider. However, after revisiting the substantive issue the outcome remains basically the same.

## DISCUSSION

 The question of how to distribute the insurance proceeds upon the destruction of a Chapter 13 debtor's vehicle, which is the subject of a bifurcated claim, has been answered by several bankruptcy courts. *See, e.g., In re Moore,* 181 B.R. 522 (Bankr.D.Idaho 1995); *In re Suter,* 181 B.R. 116 (Bankr. N.D.Ala.1994); *In re McCauley,* 173 B.R. 453 (Bankr.M.D.Ga.1994); *In re McDade,* 148 B.R. 42 (Bankr.S.D.Ill.1992); *In re Pourtless,* 93 B.R. 23 (Bankr.W.D.N.Y.1988); *In re Tucker,* 35 B.R. 35 (Bankr.M.D.Tenn.1983). The foregoing courts have ruled that when the property of the bankruptcy estate has revested in the debtor upon confirmation, the creditor/lienholder is entitled to be paid the insurance proceeds to the extent of the balance due on its secured claim; the debtor is entitled to receive the remaining balance of the insurance proceeds; and the creditor/lienholder is entitled to be paid the unsecured portion of its claim in accordance with the terms of the confirmed plan.

Contrary results have been reached when the destroyed vehicle was still property of the Chapter 13 estate. *See In re Hill,* 174 B.R. 949 (Bankr.S.D.Ohio 1994) (debtor's property did not revest in the debtor upon confirmation; insurance proceeds were property of the estate and Chapter 13 Trustee was entitled to turnover of the proceeds); *In re Arkell,* 165 B.R. 432 (Bankr.M.D.Tenn. 1994) ("[C]asualty insurance proceeds from the destruction of property of a Chapter 13 estate are property of the Chapter 13 estate;" after paying the creditor on its secured claim, allowing debtor to use the balance of the insurance proceeds to buy a replacement car was consistent with the requirement in the confirmation order that the debtor preserve and protect property of the estate.); *In re Woods,* 97 B.R. 850 (Bankr. W.D.Va.1989) (destroyed car was property of the debtor's estate; debtor allowed to purchase a replacement vehicle with the insurance proceeds and creditor's lien attached to the new vehicle).

In *Pourtless,* the bankruptcy court satisfactorily addressed the concern that by receiving part of the insurance proceeds the debtors would be receiving a windfall:

At first blush, the Court had been troubled by the thought that perhaps the debtors in some fashion were receiving a windfall in this case because they would be receiving a portion of the insurance proceeds, the thought being that perhaps that fact, in and of itself, indicated an erroneous valuation at the point of confirmation.

While there is no analytical evidence on this point, the Court is now satisfied that its concern was basically too shallow in its approach. Many Chapter 13 plans, like this one, provide for priority payment on secured claims. Since payment on a secured claim must reflect the time value of money [see, § 1325(a)(5)(B)(ii) ], such a priority represents a cost saving to debtors. A concomitant effect of that priority, however, will often be that the debtor builds an equity in the vehicle. That is to say, the payment stream more than compensates for depreciation of the vehicle.
*Pourtless,* 93 B.R. at 26.

Here, the property of the Chapter 13 estate revested in the debtor upon confirmation. This Court agrees with the position that when estate property has revested in the debtor and if the vehicle which is the subject of a bifurcated claim is destroyed, the creditor/lienholder is entitled to be paid the insurance proceeds to the extent of its secured claim; the debtor is entitled to receive the remaining balance of the proceeds; and the creditor/lienholder is entitled to be paid on its unsecured claim in accordance with the terms of the confirmed plan. The Court's research reveals that this stand is consistent with the motor vehicle insurance law of the state of Missouri. *See Shelter Mut. Ins. Co. v. Flint,* 837 S.W.2d 524, 530 (Mo.App.1992) ("[A] loss payable clause [in an automobile insurance policy] 'constitutes a separate and distinct contract between the mortgagee and the insured *up to the amount of the debt secured.'* ") (emphasis added); *Charter Bank*

*of Boonville v. Shelter General Ins.,* 664 S.W.2d 44, 46 (Mo.App.1984) (same). Here, the proceeds of the insurance policy are payable to Toyota to the extent of its secured interest in the Geo Prizm. *See Suter,* 181 B.R. at 119. As the owner of the insurance policy, the debtor is entitled to recover the proceeds of the policy that exceed Toyota's secured portion of its claim. *See id.* In other words, the debtor is entitled to receive the insurance proceeds that represent the debtor's equity in the destroyed vehicle.

■ Further, as the provisions of a confirmed Chapter 13 plan bind the debtor and each creditor to its terms, *In re Guernsey,* 189 B.R. 477, 482 (Bankr.D.Minn.1995), here by recovering the insurance proceeds to the extent of the remaining balance of its secured claim and by receiving payment on its unsecured claim in accordance with the terms of the plan, Toyota will receive the payment on its claim, both the secured and unsecured portion, that the debtor provided for in the plan and that Toyota was entitled to receive at the time the plan was confirmed. Toyota's rights in this case will be totally extinguished upon payment of the sums called for in the order of confirmation. *See Pourtless,* 93 B.R. at 26. Toyota is not entitled to receive any more than that to which it was entitled pursuant to the terms of the confirmed plan.

■ Toyota's contention that the insurance proceeds remaining after satisfaction of its secured claim and the $400 payment to the Trustee must be distributed for the benefit of all the unsecured creditors, including itself, must fail. As previously remarked, upon confirmation the property of the estate revested in the debtor. "Upon confirmation, all property of the estate, including the debtors' automobile, vest[s] in the debtors free and clear of any claim or interest of any creditor provided for by the plan except as otherwise provided in the plan itself or in the order confirming the plan." *Tucker,* 35 B.R. at 36. In this case, the confirmed plan provided that only Toyota had a partially secured interest in the debtor's Geo Prizm. Because the unsecured creditors had no interest in the debtor's Geo Prizm, the debtor's unsecured creditors, including Toyota for the unsecured portion of its claim, are not entitled to share in the remaining insurance proceeds. All of the unsecured creditors, including Toyota, must be paid in accordance with the terms of the confirmed plan.

### CONCLUSION

Based on the above discussion, the motion by Toyota Motor Credit Corporation for reconsideration of the Court's order entered on November 29, 1995, is GRANTED.

The Court ORDERS that the debtor, Berhe H. Habtemichael, and Toyota Motor Credit Corporation shall endorse said insurance check issued by American Family Insurance Company in the amount of $4283.50, and forward said funds directly to Richard V. Fink, Chapter 13 Trustee, for disbursement on Toyota Motor Credit Corporation's secured claim pursuant to Local Rule 13.12(B), and

ORDERS that Richard V. Fink, Chapter 13 Trustee, shall distribute said insurance proceeds on Toyota Motor Credit Corporation's secured claim in the amount of $1143.81, unless the parties agree that another figure is appropriate, at 9% interest, less his allowable costs and fees, and,

ORDERS that Richard V. Fink, Chapter 13 Trustee, shall deduct out of the insurance proceeds after satisfying Toyota Motor Credit Corporation's secured claim, the sum of $400.00 as and for debtor's September and October, 1995, Chapter 13 plan payments, and

ORDERS that the balance of the funds from the insurance proceeds shall be disbursed directly to the debtor, Berhe H. Habtemichael, as and for the purchase of a used motor vehicle, and

ORDERS that Toyota Motor Credit Corporation shall release the title of the 1990 Geo Prizm to American Family Insurance Company upon receipt of the secured funds from the Chapter 13 Trustee, and

ORDERS that the remaining unsecured portion of Toyota Motor Credit Corporation's claim shall be paid in accordance with the terms of the debtor's confirmed plan during the duration of the plan.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.