**In re James A. WEST, Sr., Knaitha D. West, Debtors.**

**No. 02–71089–A.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

April 13, 2006.

---

542

Starr I. Yoder, Chesapeake, VA, for Debtors.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on the Chapter 13 trustee's Motion for Turnover of Vehicle Title and Request for Hearing, the Stipulation of Facts between the trustee and NAE Federal Credit Union ("NAE") and the argument of counsel. While the trustee in this case has not claimed an interest in the proceeds of the insurance policy, he and counsel for NAE have requested the Court to rule on their dispute in order to clarify the issue for the Bar. This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. After taking the matter under advisement, we make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The facts in this case are not in dispute. On February 21, 2002, James West and Knaitha West filed a voluntary Chapter 13 petition with this Court. On March 7, 2002, the debtors filed their original plan, which was confirmed by order of the Court entered on May 29, 2002. Their confirmed plan calls for payment of the 1997 Ford Expedition through the plan, lists the amount owing as $20,000.00 and the Expedition's value as $21,000.00 with 12% interest.

On May 13, 2002, NAE filed a proof of claim for the Ford Expedition in the amount of $25,989.54 and listed the Expedition's value as $23,025.00.

On September 12, 2002, the trustee filed a Motion and Notice to Allow Claims, which settled NAE's secured portion of its claim at $21,000.00 and its unsecured portion at $4,489.54. NAE received the mo-

tion and notice and did not object. The motion was granted by the Court on October 17, 2002.

On July 14, 2005, GEICO Insurance Company ("GEICO") advised the trustee that the debtor's Ford Expedition had been in an accident and was declared a total loss. As a result, GEICO sent the trustee a check in the amount of $9,336.50, representing the proceeds of the insurance policy purchased by the debtors post-petition. NAE is the loss payee on the policy.

The trustee has distributed to NAE on behalf of the debtors a total of $21,061.96, consisting of $14,664.39 in principal and $6,397.57 in interest. There remains due at this time to NAE the sum of $6,335.61, representing interest owed on its secured claim.

On November 30, 2005, the trustee filed the instant motion seeking the turnover of the title to the vehicle from NAE, and upon receipt of the same, the trustee states he will send the remaining $6,335.61 to NAE to satisfy in full its secured claim. The trustee maintains that the remaining insurance proceeds should be held by him and turned over to the debtors only upon successful completion of their plan payments. NAE argues that 11 U.S.C. § 1327(b) provides that the confirmation of the debtors' plan revests their assets in the debtors, and therefore, the estate does not have any interest in or claim to the insurance proceeds. NAE maintains that as the loss payee on the insurance policy, it is entitled to the full amount of the insurance payment, $9,336.50, to settle its secured claim and the majority of its unsecured claim against the debtors. NAE

states that the trustee has no authority to retain any part of the money for any reason, including payment to the debtors.

## CONCLUSIONS OF LAW

In support of his position the trustee cites the holding in *In re William C. West, et al.,* Case No. 99–40291, decided by the Court on March 20, 2002, in the Newport News Division. That decision reaffirmed and relied on the ruling of the Illinois Bankruptcy Court in *In re Feher,* 202 B.R. 966 (Bankr.S.D.Ill.1996), which held that because of the debtor's shared interest in insurance proceeds, those proceeds became part of the bankruptcy estate. The *West* Order, which was submitted by counsel in that case, also cites *American Bankers Insurance Company of Florida v. Maness, etc. (In re Houska),* 101 F.3d 358 (4th Cir.1996) for a limited proposition, but unfortunately does not analyze its holding, which is in direct contradiction to that of *Feher.* We elect to follow the holding in *Houska* as binding precedent in this Circuit.

The facts in *Houska* are complicated at best. However, some of the facts are identical to those in the case at bar and while the trustee in that case was attempting to collect the proceeds of the insurance policy for the estate for the trustee to administer, a fact not analogous to the instant case, the law in *Houska* is still applicable here.

The debtors in *Houska* filed bankruptcy on August 27, 2001, and subsequently, in March, 1993, acquired an insurance policy on their real property and its contents.[1]

---

1. The debtors acquired the policy based upon a contract between one of their mortgage companies, Household Mortgage Corporation, and American Bankers Insurance Company, which contract "compel[ed] American Bankers to 'force place' an insurance policy

on any property in which Household was the mortgagee if either party determined that no other insurance covered it." *Houska,* 101 F.3d at 361. While not pertinent to the facts in the instant case, the debtors in *Houska* had a second insurance policy on their home and

*Id.* at 360–61. While still in bankruptcy, the debtors' home was destroyed by fire and the trustee claimed that the proceeds from the post-petition insurance policy belonged to the estate. *Id.* at 360. The district court disagreed with the trustee and granted summary judgment for American Bankers stating that " 'under Virginia law, payments pursuant to a contract of insurance protecting against damage to property are not considered to be proceeds derived from the property itself. . . .' " *Id.* at 361–62. The Fourth Circuit affirmed the decision of the district court and gave the following analysis as support for its decision.

" 'The commencement of a case under [the Bankruptcy Code] creates an estate. Such estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case.' " *Id.* at 362 (quoting 11 U.S.C. § 541(a) (1994)).[2] Property that the debtor acquires post-petition is not part of the estate with few exceptions, only two of which apply to the facts at hand, " 'proceeds . . . of or from property of the estate' and 'any interest in property that the estate acquires after the commencement of the case' ". *Houska,* 101 F.3d at 362 (quoting 11 U.S.C. § 541(a)(6) & (7)). The court found that because the estate did not purchase the policy, nor were estate funds used to purchase the policy, the only way the trustee could be successful in his claim to the proceeds was to prove that they were proceeds of the destroyed property itself and "not merely proceeds of the . . . insurance polic[y], which w[as] not property of the estate." *Id.* at 363. The court went on to find that while federal law does prescribe what property makes up the estate, "state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework." *Id.* In answering the question of a countervailing federal interest, the *Houska* court found that none existed because the Code does not define "proceeds." *Id.* The court went on to find the case law interpreting § 541(a)(6) as requiring that insurance payments be considered proceeds of the underlying property rather than the policies themselves was distinguishable on their facts. The distinguishing fact being that in those cases the policies were purchased pre-petition, but the policy in *Houska* was purchased post-petition. *Id.* at 363–64. Additionally, the Fourth Circuit found there was no reason to reject the extensive common law on the subject, which classified payments on insurance policies as proceeds of the policies themselves based on contract law between the parties, rather than proceeds from the property they insured. *Id.* at 364–65. The court then recognized the long standing Virginia law that "payment made pursuant to insurance contracts protecting against damage to property are not proceeds derived from the property itself." *Id.* at 365 (citing *Thompson v. Gearheart,* 137 Va. 427, 119 S.E. 67 (1923)). Therefore, the court held that the proceeds of a policy purchased post-petition never became part of the estate, making it impossi-

---

its contents in which the trustee also claimed an interest in the proceeds. *Id.* at 360. That policy was a replacement policy for one the debtors had at the time of their bankruptcy filing. *Id.* The trustee argued that because it was a replacement policy the estate was an intended beneficiary and should received the proceeds. *Id.* at 361. The court found that under Virginia law both parties to a contract

have to intend for a third party to benefit in order to have any claim and that there was no evidence that both parties to the contract had the requisite intent. *Id.* at 366.

2. After researching the 1994 Code, it seems that the *Houska* court omitted subparagraph 1 from its citation. The citation should read 11 U.S.C. § 541(a)(1).

ble for the trustee to have any claim in them.

In the instant case, we have debtors who purchased an automobile insurance policy *post-petition.* The insured vehicle was then destroyed and a payment made, albeit to the trustee, pursuant to the insurance policy. According to Virginia law that payment does not constitute proceeds of the vehicle, but rather of the insurance policy. As such, the proceeds do not belong to the estate, but should pass according to the contract between the debtor and the insurer, GEICO. The trustee has no right to any of the proceeds even for the limited purpose of holding them in escrow for payment to the debtors upon successful completion of their plan. The proceeds rightfully belong to NAE as the loss payee on the insurance policy.

The trustee shall pay to NAE the full amount of the insurance proceeds, $9,336.50, which satisfies the balance of NAE's secured claim in the amount of $6,335.61, and a majority of NAE's unsecured claim of $4,489.54. The balance of NAE's unsecured claim, $1,488.65, is to be paid according to the debtors' confirmed plan.

Regarding the title of the vehicle, § 1327(b) vests all the property of the estate in the debtor upon confirmation unless the confirmed plan provides otherwise. 11 U.S.C. § 1327(b). The debtors' plan did not provide otherwise, and in fact reiterated that all property of the estate revested in the debtor upon confirmation. Therefore, upon satisfaction of the secured debt, NAE must turn over to the debtors the title to the Ford Expedition.

## CONCLUSION

For the foregoing reasons, the trustee's Request for Hearing is **GRANTED,** but his Motion for Turnover of Vehicle Title is hereby **DENIED.**

**IT IS SO ORDERED.**