**In the Matter of Leon CAREY, Debtor.**

**Leon CAREY, Movant,**

**v.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Respondent.**

**Bankruptcy No. 96–53033.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Nov. 22, 1996.

Stacey Nestor, Macon, GA, for Movant.

J.B. Marshall, Macon, GA, for Respondent.

Camille Hope, Chapter 13 Trustee, Macon, GA.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Leon Carey, Movant, filed on October 17, 1996, his Motion to Use Cash Collateral and to Require Substitution of Collateral. General Motors Acceptance Corporation, Respondent, filed its response on October 30, 1996. A hearing was held on November 6, 1996. The Court, having considered the stipulation of facts, the record in this bankruptcy case, and the arguments of counsel, now publishes this memorandum opinion.

Movant purchased a 1995 Chrysler Sebring automobile. Movant obtained collision insurance on the automobile. Respondent financed the purchase and holds a security interest in the automobile.

Movant filed a petition under Chapter 13 of the Bankruptcy Code on August 2, 1996. Movant's automobile was damaged beyond repair in an accident on September 9, 1996. Movant's insurance company sent Respondent a check dated September 25, 1996, in the amount of $17,160.50, which represents the insurance proceeds on the automobile. The check was payable to "General Motors Acceptance Corp. FAO: Leon Carey."[1] The value of Respondent's interest in Movant's automobile was $16,375.[2]

Movant is an employee at Robins Air Force Base. Movant is not self-employed or engaged in the operation of a business.

Respondent wants to use $16,375 of the insurance proceeds to satisfy its secured claim. Respondent proposes to turn over the remaining $785.50 to the Chapter 13 Trustee. The Court has not held a hearing on confirmation of Movant's proposed Chapter 13 plan.

Movant is using a friend's truck to travel to his job. Movant needs to purchase another automobile. Movant has been unable to obtain credit to purchase an automobile. Movant wants to use part of the insurance proceeds paid to Respondent to purchase a 1995 Ford Thunderbird for $14,350. Movant offers Respondent a replacement lien on the automobile he proposes to purchase. Respondent's secured claim will be paid through Movant's Chapter 13 plan.

Movant relies upon the following sections of the Bankruptcy Code:

**§ 1303. Rights and powers of debtor**

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363($l$), of this title.

11 U.S.C.A. § 1303 (West 1993).

**§ 363. Use, sale, or lease of property**

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

. . . .

---

1. FAO apparently means "for account of."

2. *See* 11 U.S.C.A. § 506(a) (West 1993).

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C.A. § 363(a), (b)(1), and (e) (West Supp.1996).

■ Under these sections, any Chapter 13 debtor,[3] after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate if the secured creditor is provided adequate protection.

"Most Chapter 13 debtors will not be engaged in business, and thus application of this provision in Chapter 13 cases is difficult. This language, [§ 363(b) and § 1303] which seems better suited for a Chapter 11 reorganization case and its usual commercial setting, appears to be applicable to a transaction or use out of the ordinary course of the Chapter 13 debtor's daily affairs. For example, it would apply to the sale of a residence or motor vehicle, but practicality dictates that it not be applied to a debtor's worn-out or 'junker' automobile when sold for only a few dollars." 5 *Norton Bankruptcy Law and Practice 2d*, § 119:3, p. 119–7 (1994).

Respondent, however, argues that a Chapter 13 debtor not engaged in business cannot use cash collateral even if adequate protection is provided. Respondent relies upon the following sections of the Bankruptcy Code:

### § 1304. Debtor engaged in business

(a) A debtor that is self-employed and incurs trade credit in the production of income from such employment is engaged in business.

(b) Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

(c) A debtor engaged in business shall perform the duties of the trustee specified in section 704(8) of this title.

11 U.S.C.A. § 1304 (West 1993).

### § 363. Use, sale, or lease of property

. . . .

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C.A. § 363(c)(1) and (2) (West 1993 & Supp.1996).

■ Under these sections, a Chapter 13 debtor engaged in business may use, sell, or lease property of the estate in the ordinary course of business *without notice or a hearing*. Because of the unique nature of cash collateral, however, special protections apply to prevent its dissipation.[4] Thus, cash collat-

---

**3.** *See* 5 *Norton Bankruptcy Law and Practice 2d*, § 119:3, p. 119–7 (1994) ("Code § 1303 gives to *all* Chapter 13 debtors the rights and powers of a trustee under Code § 363(b) to use, sell, or lease property of the estate out of 'the ordinary course of business'") (emphasis added).

**4.** 2 *Collier on Bankruptcy* ¶ 363.04, p. 363–26 (15th ed. 1996).

eral cannot be used unless the creditor consents or unless, after notice and a hearing, the court determines that the creditor is provided adequate protection.

■ A reading of the applicable sections of Chapter 13 of the Bankruptcy Code persuades the Court that section 1303 conditions, but does not prohibit, a consumer debtor's right to use cash collateral. Under sections 363(b) and 1303, notice and a hearing are required before a consumer debtor can use a secured creditor's collateral. Under section 363(b), after notice and a hearing, a consumer or business debtor can use *any* property of the estate if adequate protection is provided. Section 1304, on the other hand, allows a debtor engaged in business to continue to operate his business *without* notice and a hearing, except that a special protection is given for cash collateral. Section 1304 simply allows a business debtor to use property of the estate in the ordinary course of operating his business without notice and a hearing unless the debtor wants to use cash collateral.

The Court now turns to consider whether the insurance proceeds at issue are property of Movant's bankruptcy estate. Movant signed a Retail Installment Sale Contract in favor of Respondent.[5] The contract provides, in relevant part, as follows:

> Security Interest. You [Movant] give the Creditor [Respondent] a security interest in (1) the vehicle being purchased, . . . (4) any proceeds of insurance policies or service contracts on the vehicle; . . .
>
> . . . .
>
> If the vehicle is lost or damaged, you [Movant] agree that the Creditor [Respondent] can use any insurance settlement either to repair the vehicle or to apply to your [Movant's] debt.

Simply stated, the contract gives Respondent a *security interest* in Movant's automobile and insurance proceeds. The contract does not provide that Respondent owns the insurance proceeds. Respondent argues that the insurance proceeds are not property of the estate because the insurance check was not payable jointly to Movant and Respondent. Movant obtained collision insurance from State Farm Mutual Automobile Insurance Company.[6] The policy provides, in relevant part, as follows:

### FINANCED VEHICLES

> If a creditor is shown in the declarations, we may pay any comprehensive or collision loss to:
>
> 1. **you** and, if unpaid, the repairer; or
> 2. **you** and such creditor, as its interest may appear, when we find it is not practical to repair **your car;** or
> 3. the creditor, as to its interest, if **your car** has been repossessed.

The Court has considered a number of decisions concerning a Chapter 13 debtor's entitlement to insurance proceeds when his automobile is damaged postpetition. *See Bradt v. Woodlawn Auto Workers, F.C.U.,* 757 F.2d 512, 515 (2d Cir.1985) (automobile insurance check payable jointly to Chapter 13 debtor and loss payee creditor is unquestionably property of the estate); *In re Arkell,* 165 B.R. 432, 435 (Bankr.M.D.Tenn. 1994) (casualty insurance proceeds from the destruction of property of a Chapter 13 estate are property of the estate); *Woods v. John Fox Oldsmobile (In re Woods),* 97 B.R. 850, 852 (Bankr.W.D.Va.1989) (creditor whose security interest extends to insurance proceeds is only entitled to adequate protection and is not entitled to insurance proceeds; Chapter 13 debtor can use insurance proceeds to purchase replacement automobile); *Contra In re Habtemichael,* 190 B.R. 871 (Bankr.W.D.Mo.1996) (loss payee creditor entitled to jointly payable insurance proceeds to extent of creditor's secured claim; Chapter 13 debtor entitled to balance of proceeds).

Respondent relies upon *In re Suter,*[7] a decision by the Bankruptcy Court for the

---

**5.** The Retail Installment Sale Contract is attached to the proof of claim filed by Respondent.

**6.** The Court, by letter of November 8, 1996, requested that counsel submit a copy of this insurance policy. Respondent has not objected to Movant's tender or to the Court considering the policy in reaching its decision.

**7.** 181 B.R. 116 (Bankr.N.D.Ala.1994).

**800**

Northern District of Alabama. In *In re Suter*, the Chapter 13 debtor wanted to use the insurance proceeds from his totaled truck to purchase a replacement automobile. The creditor was the loss payee of the insurance policy. The insurance proceeds were payable to the creditor. The bankruptcy court denied the debtor's request and stated:

> Because AmSouth was the loss payee of the insurance policy, the proceeds of the policy are not property of the bankruptcy estate and are payable to AmSouth, at least to the extent of AmSouth's interest in the property insured. *Accord, First Fidelity Bank v. McAteer,* 985 F.2d 114 (3rd Cir.1993); *In re Anchorage Nautical Tours, Inc.,* 102 B.R. 741 (9th Cir. BAP 1989); *In re Johnson,* 162 B.R. 464 (Bankr.M.D.N.C.1993); *In re Goodenow,* 157 B.R. 724 (Bankr.D.Me.1993); *In re McLean Industries, Inc.,* 132 B.R. 271 (Bankr.S.D.N.Y.1991); *In re Offshore Carrier and Liner Service, Inc.,* 82 B.R. 504 (Bankr.E.D.Mo.1988).

> Since the Debtor is the owner of the insurance policy, however, he is entitled to recover the proceeds of the policy which exceed AmSouth's interest in the property insured.

181 B.R. at 119.

The bankruptcy court, however, also stated:

> The present case may be distinguishable from cases in which the secured creditor only has a security interest in the insurance proceeds and is not a loss payee on the policy, as well as cases in which the insurance proceeds are payable jointly to the debtor and the secured creditor.

181 B.R. at 119 n. 3.

■ Turning to the case at bar, the Court is persuaded that the insurance proceeds are property of Movant's bankruptcy estate. Respondent is a secured creditor with a security interest in the insurance proceeds. The Court has not been provided with evidence that Respondent holds any other interest in the insurance proceeds. Movant's insurance policy provides that payment for a totaled automobile may be made to both Movant and Respondent.

■ Movant wants to use part of the insurance proceeds to purchase a used automobile for $14,350. Movant's offer of adequate protection is to provide Respondent with a replacement lien on the purchased automobile. Respondent's secured claim will be paid through Movant's proposed Chapter 13 plan. The Court is persuaded that Movant's offer is adequate protection for Respondent's interest. *See* 11 U.S.C.A. § 361 (West 1993) (adequate protection may be provided by a replacement lien and periodic cash payments). Movant, of course, must obtain insurance on the replacement automobile.[8]

The Court is persuaded that it should grant Movant's Motion to Use Cash Collateral and Require Substitution of Collateral.

---

8. This will be required by the Court's order of confirmation.