[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-9390

_____

D. C. Docket No. CV 195-167
Bkcy No. 92-11715

IN RE:      ALBERT G. STEVENS,
            EDELGARD STEVENS,

Debtors.

-----------------------------------------------------------------

FORD MOTOR CREDIT COMPANY,

Plaintiff-Appellant,

versus

ALBERT G. STEVENS,
EDELGARD STEVENS,

Defendants-Appellees,

BARNEE C. BAXTER,

Trustee-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 12, 1997)**

Before COX and BARKETT, Circuit Judges, and HUNT*, District Judge.

_____

*Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

BARKETT, Circuit Judge:

Ford Motor Credit Company ("Ford") appeals from the district court's order permitting the Chapter 13 Trustee ("the Trustee") to recover from Ford alleged overpayments that Ford received from a confirmed Chapter 13 bankruptcy plan.

Albert and Edelgard Stevens ("the Debtors") filed a Chapter 13 petition in the U.S. Bankruptcy Court for the Southern District of Georgia. Among their assets was a 1992 pick-up truck, in which Ford held a properly perfected security interest. Ford was also the named loss payee on an insurance policy covering the truck. As part of the Debtors' confirmed Chapter 13 plan, the bankruptcy court allowed Ford's secured claim, in which it requested the amount of $18,586.72, plus interest at a rate of 12% as provided by local bankruptcy court rule. Approximately one year later, after the Trustee had made numerous payments to Ford under the plan, the truck was completely destroyed in an accident. In response to Ford's request, the insurance company paid directly to Ford the sum of $14,967.42, which reflected the remainder of the debt owed to Ford, and interest calculated at a rate of 13.5% pursuant to the original contract with the Debtors,[1] rather than at the 12% rate provided in the bankruptcy plan. Combined with the principal payments that Ford had already received from the Trustee, Ford recovered $1,852.83 more than what it should have received under the Chapter 13 plan. The Trustee requested that Ford refund the overpayment and when Ford failed to do so, the Trustee withheld the amount of the overpayment from Ford's monthly lump sum disbursement check. This check included payments due to Ford from all of the debtor accounts administered by the Trustee.

---

[1]The interest portion of the insurance proceeds reflected the difference between the 13.5% contractual interest rate and the 12% interest rate from the date of the confirmation of the bankruptcy plan until the destruction of the truck, plus interest that accrued at the original 13.5% rate in the five months before the plan was confirmed.

**DISCUSSION**

As a threshold matter, we first consider the Trustee's motion to dismiss Ford's appeal in this case on grounds that the issues raised in the appeal became moot upon the Debtors' discharge from the bankruptcy court. The Debtors' discharge was entered on April 5, 1995. On July 10, 1996, however, the bankruptcy court reopened the case and revoked the discharge for the purpose of correcting an administrative error. It appears that the case remains open. The Trustee argues that, notwithstanding the reopening of the case, Ford's appeal is moot because no relief would be available should Ford prevail. We find no merit in this argument, and deny the Trustee's motion to dismiss.

Turning to the merits, we first consider Ford's argument that the insurance proceeds it received as the named loss payee on the insurance policy covering the truck are not property of the bankruptcy estate, and that, thus, Ford was entitled to retain the amount reflecting the original contractual interest rate from the insurer. The property of a Chapter 13 bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," which includes "proceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(1) & (6). Confirmation of a plan under Chapter 13 of the Bankruptcy Code binds the debtors and creditors to the terms of that plan. 11 U.S.C. §1327(a). If insurance proceeds are considered property of the bankruptcy estate, then the distribution of those proceeds is governed by the terms of the confirmed Chapter 13 plan.

Ford does not dispute that the truck and the insurance policy covering damage to the truck were property of the Debtors and, therefore, property of the Chapter 13 estate. The fact that the insurance policy is property of the bankruptcy estate, however, does not necessarily mean that the

3

proceeds from that policy are also property of the estate. In some circumstances, a creditor or beneficiary other than the debtor may be entitled to proceeds distributed pursuant to an insurance policy that is property of a bankruptcy estate. See, e.g., First Fidelity Bank v. McAteer, 985 F.2d 114, 117 (3d Cir. 1993) (holding that proceeds from credit life insurance policy belonged to creditor and not to the bankruptcy estate); In re Louisiana World Exposition, 832 F.2d 1391, 1399 (5th Cir. 1987) (holding that proceeds from Directors and Officers liability insurance policy held by bankrupt corporation were not property of bankruptcy estate). But cf. Vitek v. Floyd (In re Vitek), 51 F.3d 530, 534-35 (5th Cir. 1995) (noting that Louisiana World Exposition might be limited to the narrow situation in which the debtor has no interest in the liability insurance proceeds).

Where the debtor has an interest in the insurance proceeds, however, the proceeds are considered property of the bankruptcy estate and distribution of the proceeds is governed according to the terms of the bankruptcy plan. See, e.g., In re Feher, 202 B.R. 966, 970 (Bankr. S.D. Ill. 1996) (holding that, "in view of the fact that Mr. Feher has a shared interest in any proceeds paid under the policy, the proceeds constitute property of Mr. Feher's bankruptcy estate"); In re Hill, 174 B.R. 949, 952 (Bankr. S.D. Ohio 1994). In order to determine the parties' respective rights with regard to the insurance proceeds from the destruction of the truck, one must consider the nature and type of the insurance policy involved, and its relationship to the property of the bankruptcy estate.

The policy at issue in this case is intended to protect both the owner and the secured creditor in the event of the destruction of the security (the truck). In the context of the insurance policy on the truck, therefore, the proceeds act as a substitute for the insured collateral. See Bradt v. Woodlawn Auto Workers (In re Bradt), 757 F.2d 512, 515 (2d Cir. 1985) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 368 (1977)) (holding that broad definition of "proceeds" under 11 U.S.C.

§541(a)(6) encompasses insurance proceeds that simply represent a "conversion in form of property of the estate"); In re Suter, 181 B.R. 116 (Bankr. N.D. Ala. 1994) (observing that, "[f]rom a secured creditor's perspective, property insurance is a substitute for the collateral insured"); see also In re Jones, 179 B.R. 450, 454 (Bankr. E.D. Penn. 1995) (concluding that home insurance proceeds constitute liquidated property of the bankruptcy estate). Ford's interest in the insurance proceeds flowing from the destruction of the secured collateral is only as great as its interest in the collateral itself. See In re Feher, 202 B.R. at 970-71; In re Arkell, 165 B.R. 432, 434 (Bankr. M.D. Tenn. 1994). That interest was defined at the time of the confirmation of the Chapter 13 plan as the remaining principal owed on the truck, with interest at a rate of 12%. Section 1327(a) of the Bankruptcy Code states that "the provisions of a confirmed plan bind ... each creditor ... whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). In this case, Ford requested the total amount due on the truck, with interest at a 12% rate, and its claim was allowed in full. Ford is bound by the terms of its allowed claim and is therefore limited to recovering from the insurance proceeds the amount of its debt as determined under the Chapter 13 plan.

Ford, however, argues that it is entitled to retain the excess insurance proceeds reflecting the contractual interest rate, relying primarily upon the Third Circuit's decision in McAteer. In that case, McAteer purchased a truck using a bank loan. As security for the loan, McAteer purchased a credit life insurance policy under which, in the event of McAteer's death, the insurer would pay the bank the amount of debt remaining according to the schedule of indebtedness, plus up to two months arrearage. McAteer subsequently filed for bankruptcy, and under the terms of the confirmed Chapter 13 plan, the bank's secured interest in the truck was "crammed down" from $13,722.22 to

5

just over $8,000, representing the bank's secured interest in the truck, plus 10% of its unsecured interest. When McAteer died, the bank recovered the full amount of its debt outstanding at the time of McAteer's death under the original indebtedness schedule. The bankruptcy court ordered all proceeds in excess of the bank's secured claim turned over to the debtor's estate. The Court of Appeals reversed, holding that because the insurance proceeds were not property of the bankruptcy estate, the creditor bank could recover the full amount of its original loan from the insurer, rather than the limited "crammed down" amount. McAteer, 985 F.2d at 117-19.

McAteer, however, is not at all analogous. In this case the insurance proceeds flow from the destruction of the truck, and stand as the substitute for the collateral securing Ford's loan. In McAteer, the insurance proceeds flow from the death of the debtor, and have no relationship to the value or status of the truck. Nor would the proceeds in McAteer take the place of the truck, as the truck was still intact and retained the same value in the bankruptcy estate before and after the debtor's death. In other words, if the truck in McAteer--which was property of the bankruptcy estate--had been destroyed, it would not have triggered the disbursement of the insurance proceeds; conversely, McAteer's death did not affect the value of the truck, which remained in the bankruptcy estate. Thus, the debtor in McAteer could not claim an interest in the proceeds by virtue of the truck's status as property of the bankruptcy estate. In contrast, in this case the disbursement of insurance proceeds caused by the destruction of the truck fell within the property of the bankruptcy estate. Having a confirmed secured claim with regard to the truck, Ford was certainly entitled to collect on its claim from the insurance proceeds as substitute collateral. It was not entitled, however, to recover more than the amount of its secured claim as confirmed by the Chapter 13 plan. We conclude, therefore, that Ford was required to turn over the excess sum to the Trustee.

We reject, however, the Trustee's argument that he acted properly to recover the overpayment by withholding funds owed to Ford by debtors in nearly 30 unrelated bankruptcy cases also administered by the Trustee. Nothing in the Bankruptcy Code authorizes the action of the Trustee, whose powers and duties are defined and delimited by statute. The powers and duties of a Chapter 13 trustee are set forth in 11 U.S.C. §1302, which provides that among the duties of a trustee are the obligations to dispose of estate monies, to advise "and assist the debtor in performance under the plan ... and ensure that the debtor commences making timely payments under section 1326 of this title." 11 U.S.C. §1302(b). As a fiduciary of the Chapter 13 estate, a trustee is authorized to bring an adversary action to recover overpayments from a creditor. See, e.g., In re Vaughn, 110 B.R. 94, 95 (Bankr. M.D. Ga. 1990). The authority to recover overpayments from a particular creditor, however, does not endow the Trustee with the authority to act on his own initiative to divert funds from the plans of other debtors in order to satisfy the overpayment. We are not persuaded by the Trustee's argument that his action was authorized by code provisions that empower a bankruptcy trustee to recover excess payments made to a creditor as well as by powers inherent in the overall scheme of the Bankruptcy Code.

The Trustee's action was not only not authorized by the Code but also affirmatively violated the Trustee's statutory obligations under the Code. A Chapter 13 trustee is obliged by statute to make payments to all creditors under the terms of the confirmed plan. 11 U.S.C. §1326(c). By withholding the amount of the overpayment from the unrelated plans, the Trustee violated his statutory obligation to make payments to creditors as required under the terms of a confirmed plan by, in effect, refusing to make the full payment required under the terms of the other plans administered by the Trustee. The Trustee also violated his obligation to assist the debtors in those

7

unrelated cases in the performance of their plans. The Trustee's action violated his duty to make payments on the behalf of the other debtors, placing them at risk for default. For these reasons, we hold that the Trustee overstepped the bounds of his authority in withholding the amount of the overpayment made by the Stevens' Chapter 13 estate from payments owed to Ford in the unrelated plans.

For these reasons, we AFFIRM the district court's holding that Ford is required to turn over the excess sum to the Trustee, we REVERSE the district court's holding that the Trustee acted properly in withholding the amount of the overpayment from payments owed to Ford in other unrelated plans, and we REMAND to the district court for further proceedings consistent with this opinion.