**In re Darryl HUFF, Debtor.**

**No. 04–40055 JTL.**

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

Oct. 5, 2005.

Brace W. Luquire, Columbus, GA, for Debtor.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

This case is before the Court on the motion of the debtor, Darryl Huff, to allow the substitution of collateral. On September 1, 2005, the Court held a hearing on the matter and at the conclusion of the hearing, took the matter under advisement. After considering oral arguments, as well as applicable statutory and case law, the Court, for the reasons given below, denies Debtor's motion to substitute collateral and hereby directs that all insurance proceeds due and payable by USAA Casualty Insurance Company as a result of the post-confirmation destruction of Debtor's 1998 Pontiac Grand Prix automobile be paid to secured creditor AmeriCredit Financial.

### FACTS

On January 8, 2004, Darryl Huff (hereinafter, "Debtor") filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code. Debtor's Chapter 13 Plan (hereinafter, the "Plan") was confirmed on April 23, 2004. The only creditor, secured or otherwise, listed in Debtor's Plan was AmeriCredit Financial (hereinafter, "AmeriCredit"). The Plan indicates that AmeriCredit was owed a debt of $14,357.00 secured by a first priority security interest in Debtor's 1998 Pontiac Grand Prix automobile. The automo-

bile is co-titled in the names of Debtor and his wife, Vicki Lynn Hill. Debtor's confirmed Plan values the Grand Prix automobile at $7,025.00 for purposes of repayment under the Plan. In accordance with the Plan, the Trustee is to make monthly payments of $184.00 to AmeriCredit for the four-year, eight-month term of Debtor's Plan. As of September 1, 2005, the remaining balance owed to AmeriCredit was $6,109.71.

Debtor and his wife, Vicki Lynn Huff, purchased the Grand Prix automobile on April 9, 2001 as evidenced by the "Retail Installment Contract and Security Agreement" (hereinafter, "Sales Agreement").[1] AmeriCredit filed the Sales Agreement with the Court on April 20, 2004 as part of its Proof of Claim.[2] The Grand Prix automobile was purchased from Carl Black Pontiac/Buick/GMC/Isuzu, which assigned the contract and security agreement to AmeriCredit via an assignment clause located on page 1 of the Sales Agreement.[3]

Page 2 of the Sales Agreement contains "Additional Terms of Th[e] Contract and Security Agreement." The paragraph titled "INSURANCE" provides in pertinent part as follows:

> You [the purchaser] agree to buy property insurance on the Property protecting against loss and physical damage .... You will name us [AmeriCredit] as *loss payee* on any such policy .... You may purchase or provide the insurance

through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this contract is paid in full.[4]

Debtor's wife, Vicki Lynn Hill, in compliance with the terms of the Sales Agreement, purchased property insurance on the Grand Prix automobile from USAA Casualty Insurance Company (hereinafter, "USAA").[5] Vicki Lynn Hill is named on the Policy as the "Insured." The policy period is stated as "MAY 04 2005 to NOV 04 2005."[6] The Grand Prix automobile is identified as vehicle 02 in the Policy, with "AMERICREDIT FINANCIAL, DALLAS TX" listed in a notation as the "LOSS PAYEE" for "VEH 02."[7] Debtor's name appears on the Policy only as an "operator" of the vehicles insured and as "co-owner" of vehicle 04, which is identified as a 1985 Chevrolet S10 pickup truck.[8]

Part D of the Policy, titled "Physical Damage Coverage," contains specifics on the payment of proceeds from the Policy in case of loss.[9] The paragraph in this part titled "Loss Payable Clause" states in pertinent part:

> Loss or damage under this policy will be paid, *as interest may appear*, to the *named insured and the loss payee* shown in the Declarations .... When we [the insurer] pay the loss payee we will, to the extent of payment, be subro-

---

1. Retail Installment Contract and Security Agreement (hereinafter, "Sales Agreement"), attached to Proof of Claim No. 003.

2. Proof of Claim No. 003.

3. Sales Agreement, p. 1.

4. *Id.* at p. 2 (emphasis added).

5. The particulars of the insurance coverage secured by Debtor's wife, Vicki Lynn Hill, are evidenced by the insurance policy (hereinafter, the "Policy") that was admitted into evi-

dence as Movant's Exhibit 2 during the hearing on the motion to substitute collateral held by the Court September 1, 2005.

6. Movant's exhibit 2, Policy, p. 1.

7. *Id.*

8. *Id.*

9. Part D begins on page 13 of the Policy.

gated to the loss payee's rights of recovery.[10]

Debtor's vehicle was totally destroyed in an automobile accident. The insurance proceeds due and payable by USAA are $5,180.35.[11] Debtor filed Motion to Substitute Collateral on July 5, 2005 asking that the Court permit Debtor to use the proceeds paid by USAA to purchase a "substantial substitute of collateral for the lien holder ...." and to "substitute that collateral for the collateral presently listed with AmeriCredit Financial." [12]

## DISCUSSION AND CONCLUSIONS OF LAW

 Debtor's motion to substitute collateral must be denied in order for the Court to be consistent with the relevant controlling authority on this issue. The Chapter 13 estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." [13] These interests include "proceeds, product, offspring, rents, or profits of or from property of the estate." [14]

Where insurance proceeds are determined to be property of the bankruptcy estate, then in accordance with 11 U.S.C. § 1327(a),[15] the confirmed Chapter 13 Plan will dictate how the proceeds are to be disbursed.[16] Alternatively, where insurance proceeds are *not* property of the bankruptcy estate, then disbursement is determined by the terms of relevant agreements that give rise to particular legal interests in the proceeds.[17]

 The answer to whether the insurance *proceeds* are property of the debtor's bankruptcy estate depends on whether the debtor has an *interest* in the proceeds.[18] Where the debtor and secured creditor "share" an interest in the proceeds, the proceeds constitute property of the bankruptcy estate and disbursement will follow the dictates of the confirmed Chapter 13 Plan.[19] The courts considering this issue agree that the proper exercise for determining the respective rights of the parties in insurance proceeds is to consider the "nature and type of ... insurance policy involved, and its relationship to the prop-

10. Movant's exhibit 2, Policy, p. 15.

11. Response of AmeriCredit, p. 2; Testimony in hearing September 1, 2005.

12. Debtor's Motion to Substitute Collateral, p. 1.

13. 11 U.S.C. § 541(a)(1) (2005).

14. 11 U.S.C. § 541(a)(6) (2005).

15. 11 U.S.C. § 1327(a) states that "the provisions of a confirmed plan bind ... each creditor, ... whether or not such creditor has objected to, has accepted, or has rejected the plan."

16. *Ford Motor Credit Co. v. Stevens*, 130 F.3d 1027, 1029 (11th Cir.1997); *In re Arkell*, 165 B.R. 432, 434 (Bankr.M.D.Tenn.1994) (Lundin, J.).

17. *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993) (holding that proceeds from credit life insurance policy were not property of the bankruptcy estate; therefore, secured creditor could recover all proceeds paid, even the amount exceeding the "crammed down" value of secured creditor's collateral listed in the debtor's confirmed Chapter 13 Plan). *See Stevens*, 130 F.3d at 1029.

18. *Stevens*, 130 F.3d at 1029. It is important to note that simply because the debtor has a property interest in the insurance *policy*, does not necessarily mean that the debtor has a property interest in the *proceeds* of that policy.

19. *Stevens*, 130 F.3d at 1030 (citing *In re Feher*, 202 B.R. 966, 970 (Bankr.S.D.Ill. 1996)). *See In re Arkell*, 165 B.R. at 435 (holding that "casualty insurance proceeds from the destruction of property of a Chapter

erty of the bankruptcy estate."[20] In cases where the secured creditor was named as "loss payee" in the insurance policy covering the secured collateral, the secured creditor was deemed to have an interest in the insurance proceeds.[21]

▮ It should be noted that mere ownership of the insurance policy by the bankruptcy estate does not *necessarily* mean that the bankruptcy estate has sole interest or ownership of the proceeds of that insurance policy.[22] Situations may exist where "a creditor or beneficiary other than the debtor may be entitled to [insurance] proceeds ...."[23] Where a secured creditor is deemed to have an interest in insurance proceeds, that interest "flowing from the destruction of the secured collateral" cannot exceed the secured creditor's interest in the collateral itself.[24] The secured creditor's interest in the proceeds would be "defined at the time of the confirmation of the Chapter 13 plan ...."[25] In sum, where both the debtor (via the bankruptcy estate) and the secured creditor (via the insurance policy) have an interest in the insurance proceeds, the secured

creditor shall be paid the value of its interest in accordance with the confirmed Chapter 13 Plan and any remainder shall be paid to the debtor as the party in whom the automobile revested when the Chapter 13 plan was confirmed.[26]

### A. AmeriCredit Financial Services, as named "loss payee" under the insurance Policy, does have an interest in the insurance proceeds.

▮ As mentioned above, "[i]n order to determine the parties respective rights with regard to the insurance proceeds from the destruction of the [secured collateral], one must consider the nature and type of insurance policy involved, and its relationship to the property of the bankruptcy estate."[27] This test was laid out in the case of *Ford Motor Credit Co. v. Stevens* where the Eleventh Circuit Court of Appeals considered circumstances similar to those in the case at bar. In *Stevens*, Ford Motor Credit, the secured creditor, was named as "loss payee" in the debtor's insurance policy covering the debtor's

13 estate are property of the Chapter 13 estate").

**20.** *Stevens,* 130 F.3d at 1030; *In re Feher,* 202 B.R. 966 (Bankr.S.D.Ill.1996) (citing *In re Hill,* 174 B.R. 949, 951 (Bankr.S.D.Ohio 1994)).

**21.** *In re Witherspoon,* 281 B.R. 321 (Bankr. S.D.Ala.2001); *In re Feher,* 202 B.R. 966 (Bankr.S.D.Ill.1996); *In re Habtemichael,* 190 B.R. 871 (Bankr.W.D.Mo.1996); *In re Suter,* 181 B.R. 116 (Bankr.N.D.Ala.1994); *McCauley v. Chrysler Credit Corp.,* 173 B.R. 453 (Bankr.M.D.Ga.1994) (Hershner, C.J.). *See In re Bailey,* 314 B.R. 103 (Bankr.N.D.Miss. 2004); *Robinson v. Citizens Bank & Trust Co.,* 2003 WL 1728414 (Bankr.S.D.Ga.2003); *In re Coker,* 216 B.R. 843 (Bankr.N.D.Ala.1997); *Carey v. General Motors Acceptance Corp.,* 202 B.R. 796 (Bankr.M.D.Ga.1996) (Hershner, C.J.); *In re Arkell,* 165 B.R. 432.

**22.** *Stevens,* 130 F.3d at 1029.

**23.** *Id.* (citing *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117 (3d Cir.1993); *In re Louisiana World Exposition,* 832 F.2d 1391, 1399 (5th Cir.1987)).

**24.** *Id.* at 1030 (citing *In re Feher,* 202 B.R. 966, 970–71 (Bankr.S.D.Ill.1996); *In re Arkell,* 165 B.R. 432, 434 (Bankr.M.D.Tenn. 1994)).

**25.** *Id.*

**26.** *In re Habtemichael,* 190 B.R. 871, 873 (citing *In re Moore,* 181 B.R. 522 (Bankr.D.Idaho 1995); *In re Suter,* 181 B.R. 116 (Bankr.N.D.Ala.1994); *In re McCauley,* 173 B.R. 453 (Bankr.M.D.Ga.1994) (Hershner, C.J.); *In re McDade,* 148 B.R. 42 (Bankr. S.D.Ill.1992); *In re Pourtless,* 93 B.R. 23 (Bankr.W.D.N.Y.1988); *In re Tucker,* 35 B.R. 35 (Bankr.M.D.Tenn.1983)). *See also Stevens,* 130 F.3d 1027.

**27.** *Stevens,* 130 F.3d at 1030.

Ford pickup truck. When the pickup truck was destroyed post-confirmation and the insurance company paid out the proceeds due under the policy, the Eleventh Circuit held that proceeds were payable to Ford Motor Credit to the extent it was still owed under the debtor's confirmed Chapter 13 Plan. The excess, the Eleventh Circuit held, was payable to the debtor.

In reaching its conclusion, the Eleventh Circuit considered the "nature and type" of the insurance policy and the policy's "relationship to the property of the bankruptcy estate." The court stated that the insurance policy was "intended to protect both the owner and the secured creditor" should the secured collateral be destroyed.[28] The proceeds of the policy, the court held, "act as a substitute for the insured collateral."[29] Ford Motor Credit, therefore, had an interest in the proceeds in accordance with the terms of the policy. The court limited Ford Motor Credit's interest in the proceeds to the value of its interest in the secured collateral itself-the amount Ford Motor Credit was still owed under the debtor's confirmed Chapter 13 Plan.

In the case at bar, AmeriCredit was Debtor's secured creditor as to Debtor's 1998 Pontiac Grand Prix automobile.[30] AmeriCredit required Debtor "to buy property insurance on the Property protecting against loss and physical damage" and to name AmeriCredit as loss payee on any such policy.[31] Debtor's wife purchased insurance on the automobile. AmeriCredit was named in the insurance Policy covering the Grand Prix automobile as "loss payee" for that vehicle. Therefore,

like in *Stevens,* it can be concluded that the Policy in this case was "intended to protect both the owner and the secured creditor" should the Grand Prix automobile be destroyed.

The Grand Prix automobile was in fact destroyed and insurance proceeds are now due and payable in accordance with the Policy. Because AmeriCredit was named in the insurance Policy as "loss payee" for proceeds paid on the Grand Prix automobile and, like in *Stevens,* the Policy was intended to protect AmeriCredit in case its collateral was destroyed, AmeriCredit does have an interest in the insurance proceeds paid as a result of the post-confirmation, total destruction of Debtor's Grand Prix automobile.

### B. It is unnecessary to determine whether Debtor or his bankruptcy estate has an interest in the insurance proceeds.

██ A Chapter 13 bankruptcy estate is made up of "all legal or equitable interests of the debtor in property as of the commencement of the case," which includes "proceeds, product, offspring, rents, or profits of or from property of the estate."[32] Where the debtor owns an insurance policy (i.e., the debtor is named as the "insured" on the policy), the *policy* is property of the debtor's bankruptcy estate.[33] However, simply because the policy is property of the estate does not necessarily mean that the *proceeds* of the policy are property of the estate.[34] The language of the policy or other circumstances may entitle a creditor or other beneficiary to the

---

28. *Id.*

29. *Id.*

30. Debtor's Chapter 13 Plan.

31. Sales Agreement, p. 2 (emphasis added).

32. 11 U.S.C. § 541(a)(1), (6) (2005).

33. *Stevens,* 130 F.3d at 1029.

34. *Id.*

proceeds.[35] Should it be determined that the debtor does in fact have an interest in the proceeds, then the "proceeds are considered property of the bankruptcy estate and distribution of the proceeds is governed according to the terms of the bankruptcy plan."[36]

In most cases that address the issue at hand, the courts are considering insurance policies owned by the debtor (i.e., debtor is named as "insured"). In those cases, even where one of the debtor's secured creditors is named loss payee under the policy, the debtor, and thus his bankruptcy estate, can still be held to have an interest in the proceeds.[37] Determining whether the debtor himself has an interest in the proceeds is important where the proceeds paid as a result of the secured collateral's destruction exceed the amount owed to the secured creditor under the confirmed Chapter 13 Plan. The issue in those cases is whether the debtor is entitled to any excess or if the secured creditor is entitled to the full amount of the proceeds, including any excess.

An example of this type of case is *McCauley v. Chrysler Credit Corp.,* where Chief Judge Hershner held that the debtor's secured creditor and named loss payee under *debtor's* insurance policy must turn over insurance proceeds paid to the secured creditor that exceeded the amount of the secured creditor's confirmed claim.[38] In that case, the insurance policy showed the debtor as the owner of the secured collateral vehicle and the secured creditor as loss payee. The vehicle was destroyed post-confirmation and the insurance company issued a check for the proceeds jointly payable to the debtor and the secured

creditor. The debtor in *McCauley* conceded that the balance of the secured creditor's claim should be paid from the proceeds, but the debtor demanded return of the excess. Chief Judge Hershner held that the secured creditor, as named loss payee, was entitled to the amount representing the unpaid portion of its claim under the debtor's confirmed Chapter 13 plan, and the debtor was entitled to any excess.

Unlike in *McCauley,* Debtor in this case is not the owner per se of the Policy. Debtor's name is not listed as the "insured" on the Policy. Further, the "Loss Payable Clause" in the Policy states that "Loss or damage under this policy will be paid, *as interest may appear,* to the *named insured* and the loss payee shown in the Declarations . . . ."[39] It is undisputed that the Grand Prix automobile was co-owned by Debtor and his wife and that the automobile was property of Debtor's bankruptcy estate. What is unclear is whether the proceeds of the insurance Policy are property of Debtor's bankruptcy estate. Such a distinction is unnecessary in deciding this case since the monies due and payable by USAA under the Policy do not exceed the balance of AmeriCredit's claim under Debtor's confirmed Chapter 13 Plan.

Respondent AmeriCredit urges that "because [AmeriCredit] is the loss payee of the insurance policy, the proceeds of the policy are not property of the estate."[40] AmeriCredit relies on the case *In re Suter* for this proposition. The court in *Suter* held "because [secured creditor] was the loss payee of the insurance policy, the

**35.** *Id.*

**36.** *Id.*

**37.** *Id.* at 1029–30.

**38.** *McCauley,* 173 B.R. at 455.

**39.** Movant's exhibit 2, Policy, p. 15.

**40.** Response of AmeriCredit, p. 2.

proceeds of the policy are *not* property of the bankruptcy estate and are payable to [secured creditor], at least to the extent of [secured creditor's] interest in the property insured."[41] In *Suter*, the insurance proceeds exceeded the balance of the secured creditor's claim under the confirmed Chapter 13 Plan and the debtor was awarded recovery of the excess.

The holding in *Suter*, however, is inconsistent with one of the conclusions of *Stevens* where the Eleventh Circuit, under circumstances similar to those in *Suter*, held that "the disbursement of insurance proceeds caused by the destruction of the [secured collateral] fell within the property of the bankruptcy estate."[42] However, the Eleventh Circuit went on to hold in *Stevens* that "[h]aving a confirmed secured claim with regard to the [vehicle], [secured creditor] was certainly entitled to collect on its claim from the insurance proceeds as substitute collateral. [Secured creditor] was not entitled, however, to recover more than the amount of its secured claim as confirmed by the Chapter 13 plan."[43] Therefore, even though AmeriCredit is incorrect, because of the holding in *Stevens*, to rely on *Suter* for authority that the proceeds are not property of Debtor's bankruptcy estate and, therefore, the rightful property of AmeriCredit, the courts in both cases reached the same result. Both courts ultimately held that secured creditors with confirmed secured claims are entitled to payment from insurance proceeds to the extent of their claims where they are named loss payees on the policies.

In the case at bar, secured creditor AmeriCredit has a balance of $6,109.71 owed on its confirmed claim. Upon destruction of Debtor's Grand Prix automobile, USAA Casualty Insurance Company owed $5,180.35 under the Policy, an amount less than the amount owed to AmeriCredit on its confirmed claim. Unlike those cases where it is vital to determine whether the debtor has interest in the insurance proceeds exceeding the secured creditor's confirmed claim, such a decision is unnecessary in the case at bar. Should such a decision be required, the Court would be called to consider issues such as whether Debtor's not being named an insured on the insurance policy would affect the outcome of the case. No such inquiry is required today, however.

The Court, by this opinion, is not making the broad statement that substitution of collateral will be disallowed in all circumstances where a secured creditor's collateral is destroyed and insurance proceeds are paid or are payable. The Court cautions that this holding is limited to the facts of this case and that the outcome may differ in cases where the collateral has not revested in the debtor by the time the collateral is destroyed. Such would be the case where destruction occurs pre-confirmation[44] or where a provision in the debtor's Chapter 13 Plan states the collateral does not revest in the debtor upon confirmation.

## CONCLUSION

AmeriCredit was named as loss payee in the insurance Policy covering Debtor's 1998 Pontiac Grand Prix automobile. The automobile secured AmeriCredit's confirmed claim against Debtor's bankruptcy estate. The automobile was destroyed post-confirmation. AmeriCredit's con-

---

41. *In re Suter,* 181 B.R. at 119 (emphasis added).

42. *Stevens,* 130 F.3d at 1031.

43. *Id.*

44. *See Carey,* 202 B.R. 796.

firmed claim totals less than the insurance proceeds paid for the destroyed vehicle. In accordance with the decision of the Eleventh Circuit in *Ford Motor Credit Co. v. Stevens,* it is concluded for the foregoing reasons that AmeriCredit, as named loss payee on the insurance Policy, is entitled to payment of all the insurance proceeds due and payable, such payment to serve as substitute for its collateral. Debtor's Motion to Substitute Collateral will be DENIED and an order will be entered in accordance with this memorandum opinion.