**In re Linda K. HARDIN and Timothy A. Hardin, Debtors.**

No. 03–31539.

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 11, 2007.

MEMORANDUM DECISION ON DEBTORS' OBJECTION TO FORD MOTOR CREDIT COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

MARGARET DEE McGARITY, Chief Bankruptcy Judge.

When the debtors' motor vehicle was totally destroyed by an insured and liable third party, Ford Motor Credit Company, the creditor that had a properly perfected security interest in the damaged car, filed a motion for relief from the automatic stay to allow it to apply insurance proceeds to its loan and release the lien. The debtors and the chapter 13 trustee opposed the relief, disputing Ford's right to the proceeds to pay its remaining secured and unsecured claims. The parties filed briefs and the court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), and the court has jurisdiction under 28 U.S.C. § 1334. Since the case was filed on July 29, 2003, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 do not apply. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

BACKGROUND

The debtors filed their chapter 13 petition and plan on July 29, 2003. Their Schedule D listed Ford Motor Credit Company as a secured creditor holding a lien on a 2001 Chevrolet Cavalier, which the debtors valued at $7,000. On September 5, 2003, Ford filed a bifurcated proof of claim for $9,187.50 as secured and $1,236.24 as unsecured. The secured portion of the claim consisted of $7,000 for the value of the vehicle and $2,187.50 of pre-computed add-on interest at 6.25%. No objections to Ford's original claim were filed.

The debtors' plan was confirmed on September 30, 2003, requiring the debtors to make $190 bi-weekly plan payments for 60 months with no less than a 20% dividend

to be paid to unsecured creditors.[1] The confirmed plan provided that property of the estate revested in the debtors at confirmation. The plan did not specify a period for which the creditor would retain its lien.

In March 2007 the 2001 Cavalier was involved in an accident with another motor vehicle and declared a total loss. The other driver's insurance carrier, Frankenmuth Insurance Company, paid a property damage claim in the amount of $5,800.20. The insurance policy was not admitted into evidence, and it is unclear if payment of the proceeds was directed to Ford as sole loss payee or jointly to the debtors and Ford. These matters are probably irrelevant, as insurance proceeds are currently being held by Ford pending the court's decision on the correct distribution of the funds.

The balance due under the contract as of the date of the motion for relief from the automatic stay was $5,591.91 and the fair market value of the vehicle immediately before the accident is believed to have been approximately $4,875.00. The chapter 13 trustee has paid a total of $6,718.95 toward the secured portion of Ford's claim and nothing toward the unsecured portion. According to the trustee's records, balances of $2,468.55 and $247.25 remain, respectively. These amounts are undisputed.

## ARGUMENTS

### Ford Motor Credit's Argument

Ford argues the policy proceeds must be paid to it as the third party beneficiary, in accordance with the terms of the contract for sale of the vehicle, and Ford may apply the proceeds to satisfy its debt under nonbankruptcy law. Any remaining proceeds should be paid to the trustee as property of the estate. *See American Bankers Ins. Co. of Florida v. Maness,* 101 F.3d 358 (4th Cir.1996); *In re West,* 343 B.R. 541 (Bankr.E.D.Va.2006). The property rights of the parties in the insurance proceeds are not determined by the confirmed plan because they were generated from a third party's insurance policy. Likewise, there is no basis under the Bankruptcy Code or state law for finding such third party insurance policy proceeds to be either property of the estate or property of the debtor. Ford points out that the debtors' confirmed plan provided for neither the distribution of insurance proceeds arising out of damage of property nor the early release of the lien after payment of the secured claim while the unsecured portion remains unpaid.

If Ford is forced to release its lien before the discharge is granted without receiving payment in full of its debt under nonbankruptcy law, it argues it will no longer be adequately protected. Thus, if the court orders that proceeds be applied only to the allowed secured and unsecured claims of Ford—100% of the secured debt with interest and 20 % of the unsecured debt without interest—as determined by the confirmed plan, then Ford urges alternatively that the court require the trustee to hold the remainder of proceeds as property of the estate until the debtors receive their discharge, subject to a lien in favor of Ford to the extent its entire debt is not paid in full. It then argues that any remaining proceeds should be paid to Ford if the case is dismissed, as it would be enti-

---

1. The plan provided for payment of at least 10% to unsecured creditors. The order confirming plan provided payment of at least 20% to unsecured creditors. The discrepancy was not explained, but since percentage payments frequently change due to the amount of claims filed or income tax refunds received, the debtors do not contest the 20% payment to unsecured creditors.

tled to these proceeds under the sale contract and under state law.

*Debtors' Argument*

The debtors urge this court to follow its colleague's ruling in *In re Estrada,* Case No. 03–33013 (Bankr.E.D. Wis. June 14, 2006). Following the opinions of case law and a learned treatise, as well as sections 506(a) and 1327(a) of the Bankruptcy Code, the *Estrada* court found that the creditor's interest in the insurance proceeds was limited to the unpaid amount of its allowed secured claim. The balance was to be paid to the trustee for distribution to unsecured creditors or distributed to the debtors to obtain a replacement vehicle, in the discretion of the trustee. In *Estrada,* all property of the debtor remained property of the estate during the pendency of the case.

In this case Ford's secured portion of the claim at the time of filing was $9,187.50. Subtracting the $6,718.95 the trustee has paid on the secured portion of the claim leaves a current balance of $2,468.55. Paying the secured claim from the $5,800.20 in proceeds leaves a remaining balance of $3,331.65 to be applied to unsecured claims, or upon the request of the debtor, to be used by the debtors toward the purchase of a replacement vehicle. Under the debtors' construction, the only thing Ford is losing is its stature as a secured creditor. By allowing the unsecured portion of the claim to remain, Ford is still a creditor under the plan and, should the plan fail, retains its right to the balance of the claim.

*Chapter 13 Trustee' Argument*

The chapter 13 trustee argues Ford should receive the remaining balance due under the plan. *See In re Estrada,* Case No. 03–33013 (Bankr.E.D. Wis. June 14, 2006). It is not clear if the trustee means the unpaid balance on the secured claim or the secured claim plus 20% of the unse-cured claim. The trustee notes it is her current practice to pay the balance due the secured creditor under the plan if the vehicle is destroyed, and any excess insurance proceeds are paid to the trustee. The dividend on the unsecured claim, currently estimated at 20%, would not be due yet as unsecured creditors are paid over the course of the plan. Because the plan provided that the debtors' property will revest in the debtors at the time of confirmation, the trustee argues the excess insurance proceeds should be paid to the debtors for the purchase of a replacement vehicle.

## DISCUSSION

Since this is a pre-BAPCPA case, cramdown has limited the creditor's interest in the collateral to its value at confirmation. We are left to determine whether it likewise limits the creditor's interest in the insurance proceeds. If the creditor owns the proceeds, the creditor can veto the debtors' use of the proceeds to repair or replace the collateral and can refuse turnover of the proceeds to the estate or demand turnover from the estate. However, if the creditor has only a security interest in the proceeds, the creditor is more vulnerable. Joann Henderson, *Bankruptcy Disaster Relief: A Chapter 13 Debtor's Right to Use Insurance Proceeds to Repair or Replace Collateral,* 35 Gonz. L.Rev. 21, 23 (1999/2000).

The overwhelming majority of the cases reviewed by the court restrict the creditor's recovery of insurance proceeds to its allowed secured claim. *See, e.g., In re Witherspoon,* 281 B.R. 321 (Bankr. S.D.Ala.2001); *In re Coker,* 216 B.R. 843 (Bankr.N.D.Ala.1997); *In re Habtemicha-el,* 190 B.R. 871 (Bankr.W.D.Mo.1996); *In re Hill,* 174 B.R. 949 (Bankr.S.D.Ohio 1994); *Matter of McCauley,* 173 B.R. 453 (Bankr.M.D.Ga.1994). In general, if the debtor is the owner of the policy, but not

the designated beneficiary or sole loss payee, the creditor is most likely entitled to the proceeds, at least to the extent of the creditor's secured claim. *See* Margaret A. Mahoney, et al., *Insurance Issues in Bankruptcy, Including D & O Insurance and What Happens to Proceeds in Commercial and Consumer Cases*, AM. BANKR.INST. CLE 425 (2005). A policy solely payable to the debtor effectively negates a creditor's direct claim to the insurance funds. However, if the policy is in place to protect the secured creditor's collateral, a debtor who is the sole loss payee may only use the proceeds to purchase a secured replacement item and/or pay off the loan. *Id.*

This court agrees with the general reasoning of those courts which have limited the creditor's recovery to its secured claim. However, all of the cases reviewed by the court appear to have involved collision insurance, a policy owned by the debtor and for which the debtor, or the debtor's secured lender, is the beneficiary. In this case, since a third party's insurance carrier's proceeds are at issue, we are dealing with liability insurance. This may or may not be a difference without distinction.

A distinction has been made, for example, in the instances where credit life insurance proceeds have been paid after the death of the debtor. In those cases, if the secured party is the primary beneficiary, then the creditor actually owns the beneficial interest. *See, e.g., First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir.1993) (proceeds of credit life insurance, which name the secured party as the primary beneficiary, belong to creditor up to amount of contract debt). Life, disability, or malpractice policies, unlike hazard policies, are also treated differently because they are dependent on something other than the destruction of collateral (i.e., death of the debtor). *In re Stevens*, 130 F.3d 1027, 1030–31 (11th Cir.1997). In this case, while the insurance policy is owned by neither the debtors nor the estate, the proceeds were paid because the negligence of a third party caused the destruction of collateral which had revested in the debtors. This makes the proceeds more analogous to the casualty insurance cases which restrict the creditor's recovery to the amount of its secured claim.

Nevertheless, Ford Motor Credit Company has urged the court to look at state law to determine its rights, especially since the policy is not property of the estate. Bankruptcy law does not create new property rights, and therefore, non-bankruptcy law determines the interests in the policy. *Cf. Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, —— U.S. ——, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007) (we have long recognized that the " 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law' "). Generally, a lienholder who is named as loss payee is entitled to the insurance proceeds, despite the claims of other lien or judgment creditors, by reason of its contractual right with the insurer. 44A AM.JUR. 2d INSURANCE § 1704. Some courts have found that the proceeds of such a policy are not property of the estate at all and are payable to the creditor, at least to the extent of the creditor's interest in the property. *E.g., In re Suter*, 181 B.R. 116, 119 (Bankr. N.D.Ala.1994).

Because the policy at issue in this case was not owned by the debtor, the creditor would not be entitled to the proceeds by reason of its contractual right

with the insurer.[2] The secured creditor would however have a security interest in the proceeds because under the Uniform Commercial Code's default rule, "[u]nless otherwise agreed a security agreement gives the secured party the rights to proceeds under s. 409.306." Wis. Stat. § 409.203(4) (2000).[3]

■ To what extent does the security interest attach? Under the revised UCC, effective July 1, 2001, "proceeds" meant the following:

1. Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;

2. Whatever is collected on, or distributed on account of, collateral;

3. Rights arising out of collateral;

4. To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or

5. *To the extent of the value of collateral* and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

Wis. Stat. § 409.102(ps) (2001) (emphasis added). Under the revised UCC, the creditor's recovery is limited to the value of the collateral, agreed in this case to be $4,875 at the time of the accident. If only it were so easy.

The security agreement in this case was entered into on March 21, 2001, and the confirmation of security interest was issued by the state on March 31, 2001, making the old UCC provisions applicable. They provide, in relevant part, the following:

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Any payments or distributions made with respect to investment property collateral are proceeds. Money, checks, deposit accounts, and the like are "cash proceeds". All other proceeds are "noncash proceeds".

(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3)(a) Subject to sub. (3m), the security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless:

---

**2.** All we know about the policy is that it was owned by the third party deemed responsible for the damage to the subject collateral. Without the policy, the court cannot determine if Ford has an independent, original contract right to the money in addition to its UCC Article 9 rights. On the other hand, without the policy, the court cannot determine if the proceeds are a substitute for the insured collateral and belong to the bankrupt-

cy estate, such as the court found in *In re Stevens,* 130 F.3d 1027, 1029–30 (11th Cir. 1997).

**3.** The current version of the UCC provides: "[t]he attachment of a security interest in collateral gives the secured party the rights to proceeds provided by s. 409.315." Wis. Stat. § 409.203(6).

1. A filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds;

2. A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds;

3. The original collateral was investment property and the proceeds are identifiable cash proceeds; or

4. The security interest in the proceeds is perfected before the expiration of the 10–day period. (b) Except as provided in this section, a security interest in proceeds may be perfected only by the methods or under the circumstances permitted in this chapter for original collateral of the same type.

(3m) If proceeds are acquired with cash proceeds from the sale of the original collateral or the sale of noncash proceeds of the original collateral and are of a type of property not described in the original financing statement, a buyer for value of such noncash proceeds who buys without knowledge of the fact that the property was purchased with cash proceeds of the original collateral and before filing of the financing statement describing such noncash proceeds, takes free of the original security interest in such proceeds.

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;

(b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph is:

1. Subject to any right of setoff; and

2. Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings less the sum of a) the payments to the secured party on account of cash proceeds received by the debtor during such period and b) the cash proceeds received by the debtor during such period to which the secured party is entitled under pars. (a) to (c). . . .

Wis. Stat. § 409.306 (2000).

Reducing this statute to its vital essence, under nonbankruptcy law in effect at the time the security agreement was entered into and the lien attached, Ford would have a security interest in the insurance proceeds up to the remaining balance of its debt. This is consistent with the retail installment contract which gave the lender a security interest in "[a]ll money or goods received for the property." *See* Exhibit B to Ford Motor Credit Co.'s Motion for Relief, Wisconsin Simple Interest Vehicle Retail Installment Contract, March 21, 2001, ¶ B.2. This would be the case if the debtors had never filed a chapter 13 petition and confirmed a plan which crammed

down the creditor's claim. *Cf. In re Tower Air, Inc.*, 397 F.3d 191 (3d Cir.2005) (under pre-revised UCC, secured creditor in chapter 7 bankruptcy was permitted to receive insurance proceeds intended to pay for damage to collateral, while retaining fully repaired collateral; noting distinction in cases where a secured creditor's claim had already been modified).

■ Pursuant to relevant state law, Ford's security interest in the proceeds flows *from its security interest* in the collateral, *see* Wis. Stat. § 409.306 (2000), not the value of the collateral. So, it would be able to recover the full amount of its remaining debt. But now bankruptcy law intervenes, and the picture changes. Under 11 U.S.C. § 506(a), Ford only has a secured claim to the extent of the value of its interest in the vehicle subject to its security interest, i.e., the value of the car when the claim is determined. Its lien is void under section 506(d) to the extent that it purports to secure a claim which is not an allowed secured claim. Additionally, the provisions of the confirmed plan bind all creditors. 11 U.S.C. § 1327(a). Under the plan, Ford was to be paid 100% of the value of its security, with the excess of its claim over the value of its security to be paid as unsecured. Since Ford's lien on the vehicle is extinguished by section 506(d) to the extent it secures any amount over the unpaid portion of its secured claim, which has a current balance of $2,468.55, its security interest in the proceeds is limited to that amount.

Ford noted that the plan did not provide for the release of its lien upon payment of its secured claim before discharge. By retaining its lien on the insurance proceeds, it hopes to retain protection of the interest it would have under state law in case the debtors do not complete the plan and obtain a discharge. If the plan were to fail and the case were to be dismissed,

section 349(b)(1)(C) would reinstate the lien denied the creditor under section 506(d). However, until that contingency occurs, the unsecured claim is not entitled to adequate protection. *In re Arkell*, 165 B.R. 432, 435 (Bankr.M.D.Tenn.1994). Changes in value of the collateral over time, due to pay down of the claim, depreciation, substitution of collateral, or even an original mistake in value do not change this result. *Id.* Accordingly, the insurance proceeds are available to the creditor to pay its secured claim, but its unsecured claim continues to be subject to the terms of the plan. Thus, the unsecured portion will be paid along with other unsecured creditors, not out of the insurance proceeds held by Ford.

■ In this case, the collateral vested in the debtors upon confirmation. This fact differs from the situation in *Estrada*, but the treatment of the creditor's claim and interest in the insurance proceeds in this case is the same as *Estrada* because the application of bankruptcy law changes the creditor's state law right to the proceeds for the same reason. However, the remainder of the proceeds is subject to the distinction. The policy in question was owned by a person who had no obligation to the debtors at the time of filing, and the policy and its owner had no relationship to any asset the debtors owned at filing. The right to collect arose after filing and would be property of the estate under section 1306(a)(1), except that a chapter 13 plan had been confirmed.

Section 1327(b) states that upon confirmation, except as otherwise provided in the plan or order of confirmation, "the confirmation of a plan vests all property of the estate in the debtor." Subsection (c) of section 1327 goes on to provide that, except as otherwise provided in the plan or order of confirmation, "the property vesting in the debtor under subsection (b) of

this section is free and clear of any claim or interest of any creditor provided for by the plan." While courts have struggled with how to harmonize the provisions of sections 1306 and 1327, *see, e.g., United States v. Harchar*, 371 B.R. 254 (N.D.Ohio 2007) (collecting cases regarding treatment of postconfirmation assets as property of estate or property of chapter 13 debtor), this court is nevertheless satisfied that excess insurance proceeds received from a third party are property of the debtors, free of claims of the trustee, Ford, or other creditors. This does not mean that these proceeds are not excess disposable income which would make the plan subject to modification under section 1329. However, as the trustee acknowledges, this is unlikely as the debtors probably need the money to replace their car. Therefore, the remaining amount of the proceeds, $3,331.65, shall be paid to the debtors.

A separate order consistent with this decision will be entered.

ORDER GRANTING, IN PART, AND DENYING, IN PART, FORD MOTOR CREDIT COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

For the reasons stated in the court's memorandum decision entered on this date, IT IS ORDER, Ford Motor Credit Company's motion for relief from the automatic stay is granted, in part, and denied, in part.

IT IS FURTHER ORDERED Ford Motor Credit Company shall apply $2,468.55 of the insurance proceeds to its claim as full satisfaction of its secured claim.

IT IS FURTHER ORDERED Ford Motor Credit Company shall release its lien on the destroyed collateral.

IT IS FURTHER ORDERED Ford Motor Credit Company shall remit $3,331.65 of the insurance proceeds to the debtors.