In re Rocky James STRZELECKI and Mary Kay Strzelecki, Debtors.

No. 5:09–bk–75019.

United States Bankruptcy Court, W.D. Arkansas, Fayetteville Division.

Filed April 21, 2014.

John Blair and Don Brady, Rogers, AR, for Debtors.

Holly N. Knight, Nashville, TN, and Curtis Clements, for AmeriCredit.

Joyce B. Babin, chapter 13 trustee.

**ORDER**

BEN T. BARRY, Bankruptcy Judge.

Before the Court are the following pleadings:

- *Motion for Approval of a Property Settlement and to Use Insurance Proceeds,* filed by the debtors on January 6, 2014;

- *Response to Debtors' Motion for Approval of a Property Settlement and to Use Insurance Proceeds by GM Financial,* filed by AmeriCredit Financial Services, Inc. d/b/a GM Financial [AmeriCredit] on January 15, 2014;

- *Motion to Incur Debt,* filed by the debtors on February 12, 2014; and

- *Response to Debtors' Motion to Incur Debt by GM Financial,* filed by AmeriCredit on March 5, 2014.

The primary issue concerns the payment of post-confirmation insurance proceeds after the debtors were involved in a vehicle accident. In November 2013, a deer and the debtors' 2005 Kia Sedona collided. Although we do not know what happened to the deer, State Farm Insurance has offered $3960 to cover the resulting damage to the Sedona in full satisfaction of its

obligation under an insurance policy.[1] The debtors argue that since AmeriCredit has been paid the entire amount of its allowed secured claim under the debtors' confirmed plan, the proceeds should be paid to the debtors so they can purchase another vehicle. The chapter 13 trustee argues that the proceeds are property of the estate and should be paid to the trustee for distribution to the debtors' unsecured creditors, subject to the debtors' requesting a refund for the purchase of another vehicle. AmeriCredit argues that the proceeds belong to AmeriCredit based on its recorded lien on the Kia Sedona.

The Court held a hearing on the debtors' motions on April 9, 2014. At the conclusion of the hearing, the Court took the matter under advisement and allowed each party 10 calendar days within which to file any post-trial briefs. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 9014 and 7052. For the reasons stated below, the Court denies the debtors' *Motion for Approval of a Property Settlement and to Use Insurance Proceeds* but grants the debtors' *Motion to Incur Debt.*

The debtors filed their chapter 13 petition and first proposed plan of reorganization on October 5, 2009. In their petition and plan, the debtors listed a debt to AmeriCredit in the amount of $14,800 that was secured by a 2005 Kia Sedona with a listed value of $4775. On October 12, 2009, AmeriCredit filed its proof of claim and listed a debt of $15,497, of which $7375 was secured by the 2005 Kia Sedona and $8122 was unsecured. AmeriCredit also asserted a lien against the Sedona, which is memorialized on the face of the title to the Sedona and is dated May 23, 2005. On October 27, 2009, AmeriCredit objected to confirmation of the debtors' plan.

The debtors amended their proposed plan on December 7, 2009, to reflect a debt to AmeriCredit in the amount of $14,800 that was secured by the Sedona and reflected a new value of $6000.[2] On March 11, 2010, AmeriCredit withdrew its objection to confirmation and on March 30, 2010, the Court entered its *Order Confirming Chapter 13.* In its order confirming the debtors' plan, the Court found that "the plan as filed by the debtors complies with all provisions of Chapter 13 . . . ," and, specifically, that the plan complies with 11 U.S.C. § 1325. Pursuant to § 506(a), the debtors' plan bifurcated AmeriCredit's allowed claim of $15,497[3] into an allowed secured claim of $6000, which was the agreed upon value of the Sedona, and an allowed unsecured claim of the balance, which, according to the trustee's summary notice of claims is $9497. The transformation or "cramdown" of AmeriCredit's claim into a secured portion and an unsecured portion is authorized under § 1325(a)(5)(B). On May 10, 2010, the chapter 13 trustee filed her *Summary No-*

---

1. The insurance policy was not introduced during the hearing and none of the parties identified the policy's loss payee. Regardless, the parties did not dispute the amount of proceeds held by State Farm Insurance.

2. The debtors amended their plan once more on December 15, 2009. However, that amendment is not relevant to the issue before the Court.

3. Although the plan states that AmeriCredit's claim has a Scheduled Debt Amount of $14,800, the Court's order confirming the debtors' chapter 13 plan states that the "total amount of an allowed claim shall be the amount stated on a proof of claim. . . ." The amount stated on AmeriCredit's proof of claim is $15,497.

*tice of Claims Filed* and provided a copy to the debtors and debtors' counsel. The summary notice reflected AmeriCredit's secured claim in the amount of $6000 and its unsecured claim in the amount of $9497. Neither the trustee nor the debtors objected to AmeriCredit's claims.

Had this case been filed prior to the enactment of BAPCPA, the Court would have to decide whether confirmation of the debtors' plan had a res judicata effect on the determination of value of AmeriCredit's secured claim in the light of the Sedona's unsuitability for service. *In re Gibson*, 218 B.R. 900, 904 (Bankr.E.D.Ark. 1997). In *Gibson*, under facts involving a vehicle, a theft, and a fire, the court found that an order confirming a chapter 13 plan fixed the value of the creditor's secured claim. *Id.* According to *Gibson*, upon "post-petition destruction of collateral," courts find that "an undersecured creditor's interest in casualty insurance proceeds [are] limited by the confirmed Chapter 13 plan to the unpaid balance of its allowed secured claim." *Id.* (citing three pre-BAPCPA cases in support). In other words, "cramdown has limited the creditor's interest in the collateral to its value at confirmation." *In re Hardin*, 375 B.R. 506, 509 (Bankr.E.D.Wis.2007) (citing additional pre-BAPCPA cases that restrict a creditor's recovery of insurance proceeds to its allowed secured claim). The pre-BAPCPA language of § 1325(a)(5)(B) supported the courts' decisions:

the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim *retain the lien* securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on ac-

count of such claim is not less than the allowed amount of such claim;

11 U.S.C. § 1325(a)(5)(B) (pre-BAPCPA code) (emphasis added).

With the enactment of BAPCPA, Congress added additional plan requirements to § 1325(a)(5) with regard to the retention of a lien that is related to an allowed secured claim:

the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim *until the earlier of*—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim

adequate protection during the period of the plan.

11 U.S.C. § 1325(a)(5)(B) (current code) (emphasis added). Most significant, Congress has now stated unequivocally that the holder of an allowed secured claim will retain the lien securing its allowed secured claim until either (1) the debtor receives a discharge under § 1328 or (2) the *underlying debt under nonbankruptcy law* has been paid. The focus is no longer on the "lien securing such claim"; rather, the focus is on the underlying debt under state law. *See, e.g., In re Williams*, 367 B.R. 625, 628–29 (Bankr.N.D.Ill.2007) ("If Congress meant § 1325(a)(5)(B)(i)(I)(aa) to be interpreted as having the same meaning as § 1325(a)(5)(B)(ii), why wouldn't it simply have written that a plan must provide that the holder of an allowed secured claim retain its lien either until discharge or until it receives 'the value, as of the effective date of the plan, of ... the allowed amount of such claim?' ").[4] A leading treatise explains the purpose of the additional code provisions:

> This language is apparently an attempt to overrule the results of cases under the prior language of Section 1325(c)(5)(B)(i) [sic] that required elimination of the creditor's lien when the allowed secured claim had been paid. For debtors who cannot complete a plan but who have completely paid an allowed

secured claim, it makes more attractive the options of a hardship discharge or a modification that allows plan completion, so that a discharge is entered and the lien can be eliminated.

8 Collier on Bankruptcy ¶ 1325.06[3][a], at 1325–33 (16th ed. rev.) (2013).[5] *In re Gibson* is one of the cases that required elimination of a creditor's lien after the allowed secured claim had been paid.

The "underlying debt" in this case is the remaining obligation for which AmeriCredit filed its proof of claim and to which neither the debtor nor the trustee objected: $15,497 (less approximately $6620[6] the trustee has already paid to AmeriCredit). Neither party disputes the nonpayment of the underlying debt nor that the debtors have not received a discharge under § 1328. Further, the Court found in its order confirming the debtors' chapter 13 plan that the plan complies with § 1325, which would include the retention language under § 1325(a)(5)(B). Based on the above facts and conclusions of law, the Court finds that AmeriCredit has retained its lien on the 2005 Kia Sedona and is entitled to the insurance proceeds in partial satisfaction of that lien. Accordingly, the Court denies the debtors' *Motion for Approval of a Property Settlement and to Use Insurance Proceeds.*

---

**4.** This result comports with *In re Fisette* in which the Eighth Circuit B.A.P. held that a lien can be avoided in chapter 13 only upon receiving a discharge or completing all of debtor's obligations under a confirmed plan. *Fisette v. Keller (In re Fisette )*, 455 B.R. 177 (8th Cir. BAP 2011). If a lien cannot be avoided prior to either discharge or completing all of the debtor's obligations, it follows that the holder of an allowed secured claim would also retain its lien on the collateral until the debtor either paid the underlying debt, received a discharge under § 1328, or completed all her obligations under a confirmed plan.

**5.** The reference should be to § 1325(a)(5)(B)(i), not § 1325(c)(5)(B)(i). There are no subsections under § 1325(c).

**6.** The trustee stated during opening statements at the beginning of the April 9 hearing that her office had paid the entire secured amount of $6000 plus $794 interest on the secured amount. It had also paid approximately $620 of AmeriCredit's unsecured claim to date.

Also before the Court is the debtors' *Motion to Incur Debt* and AmeriCredit's response to the motion. The gravamen of AmeriCredit's response relates to the debtors' use of the insurance proceeds from the Sedona for a down payment on another vehicle. However, the debtors' motion does not reference the use of insurance proceeds to pay the down payment. Based on the Court's finding that the debtors are not entitled to the insurance proceeds, AmeriCredit's response is moot. Because there are no other objections before the Court, the Court grants the debtors' *Motion to Incur Debt.*

IT IS SO ORDERED.